**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE<br><br>                Plaintiff,<br><br>    -vs.-<br><br>ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC.<br><br>                Defendants. | :<br>:<br>:   CIVIL ACTION NO. 07-1288-RB<br>:<br>:   ORAL ARGUMENT REQUESTED<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## ALLSCRIPTS, LLC'S MOTION TO COMPEL ARBITRATION

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"), defendant

Allscripts, LLC ("Allscripts") moves the Court for an order compelling arbitration of the claims

against Allscripts of Plaintiff Philadelphia Health & Education Corporation d/b/a Drexel

University College of Medicine ("DUCOM") and dismissing this action against Allscripts, or in

the alternative, compelling arbitration of the claims of DUCOM and staying this action until the

completion of the arbitration.[1]  In support of its motion, Allscripts states:

1.      Allscripts has entered into a written agreement with DUCOM to provide an

electronic medical records software program ("the Agreement"). (Complaint ¶ 9). Section 30 of

the Addendum to the Agreement, headed "Dispute Resolution," provides:

---

[1]      Defendant Medicomp Systems Inc. is not a party to the arbitration agreement between Allscripts and DUCOM. Any claims by DUCOM against Medicomp Systems Inc. should be stayed pending the completion of the arbitration between Allscripts and DUCOM.

> Except for injunctive relief permitted by Paragraph 2,[2] each party
> hereby agrees to resolve each claim, dispute or other dispute
> arising out of or relating to this Agreement, pursuant to the
> following procedure. . . .   Failing resolution . . . the matter shall
> promptly be submitted for arbitration in Philadelphia in accordance
> with the rules of the American Health Lawyers Association, whose
> decision shall be binding and conclusive in all respects.

> [Complaint, Exhibit A-2, §30(A); the Agreement and Addendum are also
> reproduced at Exhibit A of the Declaration of Jennifer K. Welsh, Esquire in
> support of Motion to Compel Arbitration for the Court's convenience.]

2.     The parties have, to date, been unable to resolve their disagreements.  Indeed,

DUCOM initially filed this action in Pennsylvania state court before it was removed to federal

court by Allscripts.  Pursuant to the Agreement, all of the claims brought by DUCOM should

now be referred to arbitration.

---

[2]     Paragraph 2, headed "COM's Confidential Information," requires Allscripts to preserve
the confidentiality of DUCOM's confidential information and grants DUCOM the right to
seek an injunction in court to address a breach of the confidentiality provision.
(Complaint, Exhibit A-2, § 2).  The instant dispute does not involve a claim of breach of
confidentiality; accordingly, Paragraph 2's exception to the dispute resolution provision
is irrelevant.

WHEREFORE, Allscripts requests that this Court enter an order either: (a) compelling arbitration of the claims of DUCOM and dismissing this action; or (b) in the alternative, compelling arbitration of those claims and staying this action until the completion of this arbitration.

Respectfully submitted,

s/ Robert N. Feltoon
Robert N. Feltoon, Esquire (ID #58197)
Jennifer K. Welsh, Esquire (ID #203154)
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 864-9600 (phone)
(215) 864-9620 (fax)
*Attorneys for Defendant Allscripts, LLC.*

Of Counsel:

Alan E. Kraus, Esquire
Jason B. Lattimore, Esquire
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, NJ 07101-3174
(973) 639-7536 – phone
(973) 639-7298 – fax

Dated: April 5, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE | : : : : | CIVIL ACTION NO. 07-1288-RB |
| Plaintiff, | : | ORAL ARGUMENT REQUESTED |
| | : | |
| -vs.- | : : | |
| ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC. | : : : | |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of

Allscripts, LLC's Motion to Compel Arbitration, and any response thereto, it is hereby

ORDERED that the Motion is GRANTED.  Plaintiff's claims must be pursued, if at all, in

arbitration.  Accordingly, this action is hereby DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
Hon. Ronald L. Buckwalter

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE | : : : : | CIVIL ACTION NO. 07-1288-RB |
| Plaintiff, | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| -vs.- | : : | |
| ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC. | : : : | |
| Defendants. | : | |

## ORDER (SUBMITTED IN THE ALTERNATIVE)

AND NOW, this _____ day of _____, 2007, upon consideration of

Allscripts, LLC's Motion to Compel Arbitration, and any response thereto, it is hereby

ORDERED that the Motion is GRANTED. Plaintiff's claims must be pursued, if at all, in

arbitration. Accordingly, this action is hereby STAYED pending the outcome of the pending

arbitration.

BY THE COURT:

_____
Hon. Ronald L. Buckwalter

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE | :<br>:<br>: CIVIL ACTION NO. 07-1288-RB<br>: |
| Plaintiff, | : ORAL ARGUMENT REQUESTED<br>: |
| -vs.- | :<br>: |
| ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC. | :<br>:<br>: |
| Defendants. | : |

## MEMORANDUM IN SUPPORT OF
## ALLSCRIPTS, LLC'S MOTION TO COMPEL ARBITRATION

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 et seq. (the "FAA"), defendant Allscripts, LLC ("Allscripts") seeks an order compelling arbitration of the claims against Allscripts of plaintiff Philadelphia Health & Education Corporation d/b/a Drexel University College of Medicine ("DUCOM") and dismissing this action against Allscripts or, in the alternative, compelling arbitration of DUCOM's claims and staying this action pending the completion of the arbitration.[1]

---

[1]     Defendant Medicomp Systems Inc. is not a party to the arbitration agreement between Allscripts and DUCOM. Any claims by DUCOM against Medicomp Systems Inc. should be stayed pending the completion of the arbitration between Allscripts and DUCOM. *See Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 370 (E.D. Pa. 2003) (compelling arbitration between parties to arbitration agreement and staying claims against other defendants when claims against non-arbitrating parties will be affected by the outcome of arbitration). Any further mention of "the parties" in this motion refers to DUCOM and Allscripts.

## INTRODUCTION

In June 2004, Allscripts entered into a written agreement ("the Agreement") with DUCOM to sell and deliver TouchWorks™, an electronic medical records software program. The Agreement sets forth the terms of Allscripts' obligation to deliver TouchWorks™, including the functions TouchWorks™ is, and is not, intended to perform.  The Agreement also includes an Addendum, with additional terms governing the parties' relationship.

Section 30 of the Addendum to the Agreement, headed "Dispute Resolution," contains a broad arbitration clause referring "each claim, dispute or other dispute arising out of or relating to this Agreement" to a dispute resolution process.  If unresolved informally, Section 30 mandates that "the matter shall promptly be submitted for arbitration in Philadelphia in accordance with the rules of the American Health Lawyers Association, whose decision shall be binding and conclusive in all respects."

DUCOM contends that the TouchWorks™ program is "faulty and fraudulent" because the software's patient visit charge calculator (the "E & M Coder") is not fully-automated; Allscripts disagrees because the Agreement did not contemplate or require a fully automatic E & M Coder.  DUCOM brought this action in the Philadelphia County Court of Common Pleas. Allscripts promptly removed that action to this Court and now seeks to compel DUCOM's compliance with the arbitration provisions of the Addendum to the Agreement.

The arbitration agreement between these parties is valid and enforceable.  Moreover, consistent with black-letter law in this Court and others, the very broad scope of the arbitration clause at issue here plainly mandates an order compelling DUCOM to arbitrate its dispute with Allscripts.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendant Allscripts is an Illinois-based limited liability company that provides healthcare-related hardware, software, and service solutions to medical providers. (*See* Complaint ¶ 5.) Plaintiff DUCOM is a healthcare institution serving Pennsylvania and New Jersey. (*See* Complaint ¶ 4.) On June 4, 2004, Allscripts and DUCOM entered into a written agreement for Allscripts to provide TouchWorks™, an electronic medical records software program, to DUCOM. (Complaint ¶ 9.) The Agreement sets forth multiple details regarding that product, including the features and limitations of the TouchWorks™ program. The Agreement also includes an Addendum, promulgating additional terms governing the relationship between the parties. (*See* Complaint, Exhibits A and A-2; the Agreement and Addendum are also reproduced at Exhibit A of the Declaration of Jennifer K. Welsh, Esq. in support of Motion to Compel Arbitration ("Welsh Decl.") for the Court's convenience.)

Section 30(A) of the Addendum to the Agreement, headed "Dispute Resolution," provides:

> Except for injunctive relief permitted by Paragraph 2,[2] <u>each party hereby agrees to resolve each claim, dispute or other dispute arising out of or relating to this Agreement, pursuant to the following procedure.</u> If any dispute arises between the parties, the parties' Project Managers shall use their reasonable best efforts to achieve a resolution. If the dispute has not been resolved by the parties Project Managers within a reasonable period of time that shall not exceed ten (10) days after such dispute has come to their attention, or such longer period as agreed to in writing by the parties, the parties shall deliver to [Allscripts'] Chief Information Officer and COM's Secretary a detailed summary of the dispute

---

[2] Paragraph 2, headed "COM's Confidential Information," requires Allscripts to preserve the confidentiality of DUCOM's confidential information and grants DUCOM the right to seek an injunction in court to address only a breach of the confidentiality provision. (Complaint, Exhibit A-2, § 2; Welsh Decl., Exhibit A, § 2.) The instant dispute does not involve a claim of breach of confidentiality; accordingly, Paragraph 2's exception to the dispute resolution provision is irrelevant.

within the ten (10) day period next ensuing, and shall within such
time period supply such designated officials or their equivalents
with a statement supporting its claim, which statement shall
include a detailed description of the matter and be accompanied by
all necessary and appropriate supporting data and materials.
<u>Failing resolution by such officials, the matter shall promptly be
submitted for arbitration in Philadelphia in accordance with the
rules of the American Health Lawyers Association, whose decision
shall be binding and conclusive in all respects.</u>  A party shall not be
liable for, and hereby waives, any claim or potential claim of such
party of which such party knew and which was not reported by it
in accordance with the provisions of this Paragraph.  [Allscripts]
agrees to continue performance of the Agreement during the time
any dispute hereunder is pending.  COM shall not be bound to any
adjustments in the compensation or time for performance for
[Allscripts'] claim unless pursuant to this dispute resolution
process or expressly agreed to by COM in writing.

(Complaint, Exhibit A-2, §30(A) (emphasis added); Welsh Decl., Exhibit A, § 30(A) (emphasis

added).)  DUCOM has admitted that the terms of the parties' Agreement "were heavily

negotiated by the parties." (Complaint ¶ 10.)

On February 6, 2007, DUCOM rolled out the TouchWorks™ program at one of its

twelve practice facilities and quickly claimed to be dissatisfied with the E & M Coder

component of one module of the program. (Complaint ¶¶ 43-44.)  The E & M Coder is designed

to assist the billing process by electronically supplying codes that correlate with medical

services. (*See* Complaint ¶ 18.)  More specifically, the E & M Coder is intended to facilitate and

expedite DUCOM's performance of the same billing procedures DUCOM had previously been

performing by other means before it had access to the TouchWorks™ program.[3]

Notwithstanding language in the parties' Agreement providing (1) "ALLSCRIPTS IS

NOT RESPONSIBLE[] FOR THE . . . DETERMINATION OF PROPER BILLING AND

---

[3]     Since only one or two of DUCOM's twelve facilities have gone "live" with the
TouchWorks™ program thus far, DUCOM must be performing its billing procedures at
its other locations without the assistance of the TouchWorks™ program.

4

DIAGNOSIS CODES" and (2) "NEITHER ALLSCRIPTS NOR ITS LICENSORS MAKE ANY

REPRESENTATION OR WARRANTY REGARDING THE APPROPRIATENESS OF ANY

OF THE NARRATIVE OR CODED DIAGNOSIS CODES DISPLAYED FOR ANY OR ALL

PATIENTS," DUCOM contends that the E & M Coder does not function properly because the

billing codes it displays are not, in DUCOM's judgment, 100% accurate. (Complaint, Exhibit A,

p. 4; Welsh Decl., Exhibit A, pg. 4; Complaint ¶ 32.) On those grounds, DUCOM contends

Allscripts breached the Agreement by providing a "faulty and fraudulent" program. (Plaintiff's

Motion for Preliminary Injunction (filed in the State Court action before it was removed to this

Court) ¶ 6.)

DUCOM did not follow the alternative dispute resolution protocol mandated by Section

30(A) of the Addendum to the Agreement -- a process that should have commenced with

informal efforts to resolve the dispute and culminated with the filing of an arbitration demand

and subsequent arbitration[4] -- but instead filed a complaint in the Philadelphia County Court of

Common Pleas, on March 16, 2007, along with a motion seeking a mandatory preliminary

---

[4]   Although DUCOM did inform Allscripts of the dispute, DUCOM has not complied with
the dispute resolution process required by Section 30(A) of the Addendum to the
Agreement. Notably, DUCOM has not delivered to Allscripts' Chief Information Officer
"a detailed summary of the dispute" or "a statement supporting [DUCOM's] claim . . .
accompanied by all necessary and appropriate supporting data and materials."
(Complaint, Exhibit A-2, §30(A); Welsh Decl., Exhibit A, §30(A).) Allscripts does not,
however, contend that DUCOM should now be required to go through the formalities of
the pre-arbitration dispute resolution process contemplated by the Agreement. The
parties have engaged, and continue to engage, in meaningful attempts to resolve this
dispute amicably. To the extent DUCOM still desires to pursue a formal resolution of
this dispute, the matter can and should proceed directly to arbitration.

injunction.[5]  (Complaint ¶¶ 1-155; Plaintiff's Motion for Preliminary Injunction.)  Instead of seeking an injunction to preserve the status quo, DUCOM's state court application sought to compel Allscripts, within thirty days, to develop and provide a fully-automated E & M Coder or, in the alternative, to provide "certified professional coders in such numbers as DUCOM may require to ensure accurate coding of all E & M services rendered . . . ."[6]  (Plaintiff's Motion for Preliminary Injunction ¶ 15.)

Allscripts removed this action to this Court on March 30, 2007.  Allscripts now files this Motion to Compel Arbitration pursuant to Section 4 of the FAA, 9 U.S.C. § 4.  No discovery has occurred in the pending matter.  (Welsh Decl. at ¶ 4.)

---

[5]     The rules governing the arbitration process selected by the parties explicitly authorize the arbitrator to grant interim injunctive relief to preserve the status quo.  Section 4.14 of the American Health Lawyers Association Alternative Dispute Resolution Service's Rules of Procedure for Arbitration provides, "The arbitrator may issue such orders for interim relief as may be deemed necessary by the arbitrator or all of the parties to maintain the status quo in the dispute without prejudice to the rights of the parties or to the final determination of the dispute."  (See Welsh Decl. at Exhibit B; see also http://www.healthlawyers.org/Content/NavigationMenu/Alternative_Dispute_Resolution/Service_Manuals/index.htm.).

[6]     Allscripts, of course, denies that DUCOM was entitled to preliminary injunctive relief, particularly of the mandatory sort DUCOM sought before the state court.  DUCOM has not renewed its application for such relief in federal court, so that request is not before this Court.  Even if it were, however, DUCOM is not entitled to a mandatory preliminary injunction in any forum.  First, DUCOM is not entitled to any such relief because the parties' Agreement not only did not obligate Allscripts to provide fully automated billing software, it explicitly disclaimed any such notion.  Second, DUCOM was not and, in the event it refiles its application for relief in this Court, would not be seeking to preserve the status quo.  The current status is that DUCOM is issuing billing codes as it always has, without a fully automated E & M Coder.  DUCOM wants to change that status quo by having the Court mandate that Allscripts provide new and different software in 30 days or underwrite the expense of DUCOM's ongoing billing procedures.  And third, if DUCOM had a valid claim (which it does not), money damages would certainly suffice to make it whole.  Said another way, DUCOM is not suffering any immediate irreparable injury that justifies injunctive relief.  See, e.g., Ortho Pharm. Corp. v. Amgen, Inc., 882 F.2d 806, 812-13 (3d Cir. 1989) (requiring showing of probability of success on the merits and imminent irreparable injury to justify a preliminary injunction).

## ARGUMENT

This Court should compel DUCOM to arbitrate this dispute. The FAA has established a strong policy in favor of arbitration, requiring rigorous enforcement of arbitration agreements. *In re Mintze*, 434 F.3d 222, 229 (3d Cir. 2006). "Arbitration is, above all, a matter of contract and courts must respect the parties' bargained-for method of dispute resolution." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998).

There can be no dispute that the FAA applies to the Agreement between these parties. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999) (recognizing arbitration clause is within scope of FAA when contract involves interstate commerce). Section 4 of the FAA provides, in relevant part, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). Under Section 4, a federal court should compel arbitration whenever a party to an arbitration provision institutes an action involving an arbitrable issue and the other party to the agreement timely demands arbitration. *Harris*, 183 F.3d at 178-79. Here, there is no dispute that there exists a valid, enforceable agreement to arbitrate, and that DUCOM has, thus far, not complied with the parties' agreement to arbitrate.

A motion to compel arbitration "requires the court to engage in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 365 (E.D. Pa. 2003) (*quoting PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). When conducting this review, courts "must apply ordinary contractual principles, with a healthy regard for the strong federal policy in favor of

7

arbitration." *John Hancock*, 151 F.3d at 137.  Measured by that standard, arbitration is plainly

required here.

## I.    THE ARBITRATION CLAUSE IS VALID AND ENFORCEABLE.

Section 2 of the FAA provides:

> A written provision in . . . a contract evidencing a transaction
> involving commerce to settle by arbitration a controversy
> thereafter arising out of such contract or transaction, or the refusal
> to perform the whole or any part thereof, or an agreement in
> writing to submit to arbitration an existing controversy arising out
> of such a contract, transaction, or refusal, shall be valid,
> irrevocable, and enforceable, save upon such grounds as exist at
> law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added).  "Cardinal among the 'ordinary contract principles'" relevant to

the validity of an arbitration agreement "is the tenet that '[i]f the language used by the parties is

plain, complete, and unambiguous, the intention of the parties must be gathered from that

language and from that language alone, regardless of what the actual or secret intentions of the

parties may have been.'" *Bazzone v. Nationwide Mut.*, 123 Fed. Appx. 503, 505 (3d Cir. 2005)

(quoting 11 Richard A. Lord, *Williston on Contracts* § 31.4 (4th ed. 1999)).  When a court deems

an arbitration clause to be valid and enforceable, the court must refer questions regarding the

enforceability of the underlying agreement to an arbitrator. *Harris*, 183 F.3d at 179.

The plain language of Section 30(A)'s written arbitration clause unambiguously expresses

the parties' agreement to submit all disputes arising out of or relating to the Agreement to

arbitration, rather than to litigate them in this Court.  DUCOM has not challenged the validity of

the parties' Agreement; to the contrary, DUCOM's claims for relief are predicated upon

Allscripts' alleged breach of the very document containing the arbitration clause DUCOM has

chosen to ignore. (Complaint ¶¶ 1-155.)  Moreover, DUCOM acknowledges that the terms of

8

the Agreement were "heavily negotiated" by the parties; it cannot now contend that it did not understand the arbitration clause or did not mean to accept it. (*See* Complaint ¶ 10.) The arbitration clause at issue is valid and enforceable.

## II.     DUCOM'S CLAIMS ARE SUBJECT TO THE ARBITRATION CLAUSE.

Nor can there be any legitimate dispute that DUCOM's claims fall within the scope of the parties' broad arbitration clause, and that DUCOM is therefore obligated to arbitrate those claims. *See Berkery,* 256 F. Supp. 2d at 366 ("[O]nce a court has determined that the dispute at issue falls within the substantive scope of the parties' arbitration clause, it is barred from hearing the merits of the suit, and must refer the matter to arbitration").

Any inquiry into the scope of an arbitration clause "must necessarily begin with the presumption that arbitration applies." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 133 F.3d 225, 231 (3d Cir. 1998). The presumption of arbitrability is "particularly strong" where, as here, the arbitration clause at issue is broad. *Miron v. BDO Seidman, LLP*, 342 F. Supp. 2d 324, 328 (E.D. Pa. 2004). "When an arbitration clause provides for arbitration of all matters 'arising under' or 'arising out of' a particular agreement, the clause is typically construed broadly to suggest that a given dispute is arbitrable." *Id.* at 330; *see also In re Prudential*, 133 F.3d at 232 (characterizing "arising out of or in connection with" language as "broadly drafted"); *Bannett v. Hankin*, 331 F. Supp. 2d 354, 360 (E.D. Pa. 2004) (calling "arising out of, or relating to this Agreement" language "quite broad").

The Court must grant a motion to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *In re Prudential*, 133 F.3d at 231 (internal citations omitted). When determining whether a given claim falls within the scope of an arbitration agreement, a court must "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Varallo*

*v. Elkins Park Hosp.*, 63 Fed. Appx. 601, 603 (3d Cir. 2003) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). As long as the factual allegations "touch matters" covered by the parties' agreement, those claims must be arbitrated. *Id.*

Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Berkery*, 256 F. Supp. 2d at 365 (*citing Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Moreover, as the United States Supreme Court has held, where an agreement provides for arbitration of any dispute arising from or relating to a contract, any question about the scope of the arbitration agreement is itself a dispute relating to the contract and must be submitted to arbitration. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 451 (2003).

This Court has routinely held that breach of contract and related misrepresentation claims, like those brought by DUCOM, are within the scope of similarly-written arbitration clauses. *Selas Fluid Processing Corp. v. Ultra-Cast, Inc.*, No. 03-6863, 2004 WL 1622034 (E.D. Pa. July 20, 2004) (holding breach of contract and misrepresentation claims fall within scope of arbitration provision applying to all claims, disputes, and other matters "arising out of, or relating to, this Contract or the breach thereof"); *Audio Video Ctr, Inc. v. First Union Nat'l Bank*, 84 F. Supp. 2d 624, 628 (E.D. Pa. 2000) (holding breach of contract claims fall within scope of clause requiring arbitration of claims "arising out of or related to this Agreement"); *Troshak v. Terminix Int'l Co.*, No. 98-1727, 1998 WL 401693 (E.D. Pa. July 2, 1998) (noting breach of contract claims "clearly" fall within parameters of broad provision requiring arbitration of any controversy or claim arising out of or relating to agreement).

In *Nova CTI Caribbean v. Edwards*, like the case at hand, the parties agreed to arbitrate "any . . . controversy, claim, or dispute arising out of or relating to the terms and conditions of th[e] Agreement." No. 03-5319, 2004 WL 35759 (E.D. Pa. Jan. 8, 2004). The Court wrote:

> As an initial matter, it is clear that [plaintiff's] breach of contract claim falls within the scope of the arbitration provision. The breach of contract claim is based on terms and conditions of the Agreement that [defendant] allegedly violated. Hence, this claim clearly qualifies as "arising out of or relating to the terms and conditions of th[e] Agreement" as stated in the arbitration provision. The Court finds that the breach of contract claim is appropriate for arbitration.
>
> [*Id.* at *4]

The arbitration clause in the parties' Agreement requires arbitration of each and every unresolved "claim, dispute or other dispute arising out of or relating to this Agreement" -- language acknowledged by this Court in other decisions to be broadly written. Accordingly, the presumption of arbitrability is particularly strong. *See Miron*, 342 F. Supp. 2d at 328. Moreover, since all of the factual allegations in DUCOM's Complaint "touch on" the parties' contract, there can be no doubt that all of DUCOM's claims against Allscripts arise out of or relate to the Agreement between the parties. *See Varallo*, 63 Fed. Appx. at 603; *see also* Complaint ¶¶ 1-155.

Because the parties' dispute falls within the substantive scope of their arbitration clause, this Court should order arbitration here. *See Berkery,* 256 F. Supp. 2d at 366.

## III.   THIS MATTER SHOULD BE DISMISSED OR STAYED PENDING ARBITRATION.

DUCOM's claims are subject to a valid, enforceable arbitration clause between these parties; this matter should therefore be dismissed or stayed pending arbitration. The FAA requires:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such

11

> suit is pending, upon being satisfied that the issue involved in such
> suit or proceeding is referable to arbitration under such an
> agreement, shall on application of one of the parties stay the trial
> of the action until such arbitration has been had in accordance with
> the terms of the agreement, providing the applicant for the stay is
> not in default in proceeding with such arbitration.

9 U.S.C. § 3. In other words, if a party to a binding arbitration agreement is sued in court on a

claim subject to an arbitration agreement, the FAA entitles that party, at a minimum, to a stay of

the court proceeding pending arbitration and an order compelling arbitration. *Bannett*, 331 F.

Supp. 2d at 358. Where all of the claims involved in the action are arbitrable, the Court may

dismiss the action pending in federal court. *Id.; see also Seus v. John Nuveen & Co., Inc.*, 146

F.3d 175, 179 (3d Cir. 1998).

In this case, all of DUCOM's claims against Allscripts are arbitrable. Consequently, this

Court should enter an order compelling arbitration. This matter, as against Allscripts, should be

dismissed.

## CONCLUSION

DUCOM bound itself to arbitrate all of its claims against Allscripts and is obligated, both under the contract and under the FAA, to abide by that agreement. For that reason, Allscripts respectfully requests the Court to enter an order either: (a) compelling arbitration of DUCOM's claims and dismissing this action; or (b) in the alternative, compelling arbitration of DUCOM's claims and staying this action pending the completion of the arbitration.

Respectfully submitted,

s/ Robert N. Feltoon
Robert N. Feltoon, Esquire (ID #58197)
Jennifer K. Welsh, Esquire (ID #203154)
Conrad O'Brien Gellman & Rohn, P.C.
1515 Market Street, Suite 1600
Philadelphia, PA 19102
(215) 864-9600 (phone)
(215) 864-9620 (fax)
*Attorneys for Defendant Allscripts, LLC.*

Of Counsel:

Alan E. Kraus, Esquire
Jason B. Lattimore, Esquire
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, NJ 07101-3174
(973) 639-7536 – phone
(973) 639-7298 – fax

Dated: April 5, 2007

13

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE | : : : : | CIVIL ACTION NO. 07-1288-RB |
| Plaintiff, | : : | ORAL ARGUMENT REQUESTED |
| -vs.- | : : : | |
| ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC. | : : : | |
| Defendants. | : | |

### DECLARATION OF JENNIFER K. WELSH IN SUPPORT OF ALLSCRIPTS, LLC'S MOTION TO COMPEL ARBITRATION

I, Jennifer K. Welsh, of full age, hereby declare and certify as follows:

1.     I am an attorney duly admitted to practice before this Court. I am an associate with the law firm of Conrad O'Brien Gellman & Rohn, attorneys for Defendant Allscripts, LLC ("Allscripts") in this action. I make this Declaration, of my own personal knowledge and under penalty of perjury, to (a) set forth certain details of the pending action between Plaintiff Philadelphia Health & Education Corporation d/b/a Drexel University College Of Medicine ("DUCOM") and Allscripts and (b) furnish this Court with certain documents relevant to this proceeding.

2.     True and correct copies of the Touchworks System Agreement and Addendum as attached by DUCOM to its complaint, but without exhibits or amendments, are attached hereto as Exhibit A.

3.     A true and correct copy of the relevant pages of the American Health Lawyers Association Alternative Dispute Resolution Service's Rules of Procedure for Arbitration are

attached hereto as Exhibit B.  The full document may be downloaded from

http://www.healthlawyers.org/Content/NavigationMenu/Alternative_Dispute_Resolution/Service

_Manuals/index.htm.

      4.      No discovery has occurred in the pending matter.

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements made by me are willfully false I am subject to punishment.

s/ Jennifer K. Welsh _____<br>Jennifer K. Welsh

Dated:  April 5, 2007

# EXHIBIT A


**Allscripts**
Healthcare Solutions

**TOUCHWORKS™ SYSTEM AGREEMENT**

Customer Name: <u>Philadelphia Health & Education Corporation d.b.a. Drexel University College of Medicine</u>
Sales Executive: <u>Chris Keeh</u>
Contract Number: <u>11204</u>
**AH 82818**

This **AGREEMENT** is made as of the latter of Customer's or Allscripts' execution below ("Effective Date") by and between the Customer identified in the signature area below and Allscripts, LLC. ("Allscripts").

Allscripts agrees to sell and deliver to Customer the hardware ("Equipment") and services ("Services"), to deliver, install, and maintain those modules of the proprietary software selected in the box below and the interfaces listed on the Payment Schedule(s) attached hereto ("Software") (collectively, "Products") and to grant to Customer a license to use the Software pursuant to the terms and conditions of this Agreement. Customer agrees to pay the requisite fees for the Software, Equipment, and Services.

| | | | |
|---|---|---|---|
| __X__ | TouchWorks Base (Includes Physician Homebase®, TouchWorks WorkFlow™ and SnapShot®) | __X__ | TouchWorks Scan™ |
| __X__ | TouchWorks Rx+™ | _____ | TouchWorks Pocket Library™ Reference Reader |
| __X__ | TouchWorks Charge™ | | Titles: |
| __X__ | TouchWorks Note™ | _____ | DrugGuide™ |
| __X__ | TouchWorks Document™ | _____ | PediaStat® |
| _____ | TouchWorks Transcribe™ | _____ | Pocket Anatomy™ |
| __X__ | TouchWorks Dictate™ | _____ | Pocket Exercises™ |
| __X__ | TouchWorks Result™ | _____ | PIER™ |
| __X__ | TouchWorks Order™ | _____ | Dose Calculator™ |
| | _____ ASP Services | | |

| Check One *(applies to all Products unless noted otherwise)* | License Type |
|---|---|
| _____ | Subscription License for the number of Providers for which Customer pays subscription fees as reflected on the attached Payment Schedule with an initial subscription term ending sixty (60) months after the first payment for 100% of the minimum number of Providers is due. |
| __X__ | Ten (10) Year Term License for a maximum of ___400___ Providers. |

**LICENSE**
Allscripts grants and Customer accepts a non-transferable, non-exclusive license to use the Software and all materials supplied by Allscripts. Use of the Software is limited to the number of Providers indicated in the table above. Customer may allow any number of non-Provider users to use the Software, but only in support of the Providers' use. The Software contains trade secrets and other Confidential Information of Allscripts and is the proprietary copyrighted property of Allscripts. Title to the Software remains at all times with Allscripts. Customer shall not modify, change, reverse engineer, copy in any form, tamper with, display, disclose or make available to others the Software or any related materials without the express written consent of Allscripts. Customer may not use or allow any person to examine the Software or any related materials for the purpose of creating another system and will not use or disclose any data or information relating to the Software or the technology, ideas, concepts, know-how or techniques embodied in the Software except as necessary to operate the Software as contemplated by this Agreement. Third party software products identified on the Equipment Schedule are licensed to Customer separately pursuant to end user license agreements from such third party vendors. Customer agrees to use the Software only in accordance with its directions for use and only in connection with Customer's internal business conducted at the address(es) ("Site(s)") identified on the attached Site Schedule. As used in this Agreement, "Providers" means a physician, osteopath, nurse practitioner, physician assistant or similar health care provider who bills for professional charges in his or her name and who has accessed or used the Product at least twice during any 90 day period. Customer will timely provide written notice to Allscripts of any change in the list of Providers at the Sites and this Agreement, and any affected Schedule, will be deemed appropriately amended.

**AMA CPT License** Customer represents that it has an electronic media license from the AMA or an authorized reseller for the most recent version of the Physicians' Current Procedural Terminology for each Provider-user of TouchWorks. If Customer does not have such a license, additional fees shall be charged.

_____
Initials
1

**EQUIPMENT**

Allscripts will specify on the Equipment Schedule the hardware and related items ("Equipment") purchased by Customer from Allscripts. Unless otherwise stated on the Equipment Schedule, all Equipment listed on the Equipment Schedule shall be purchased by Customer. On or before the date on which Allscripts is scheduled to install the Products, Customer shall have installed (or made available) electrical power at the installation Site sufficient to operate the Products. Customer also shall have obtained access at the Site to a telephone line and other applications specified in the applicable Allscripts' system environment specifications that are dedicated to the exclusive use of the modem for the Products. If the Products are to operate on the Customer's computer network, Customer is responsible for all the hardware, software (including licenses), and other equipment necessary to connect the Products to the Customer's computer network ("Network"). The cost of computer supplies (e.g., labels, paper and printer cartridges) and the installation of the electrical power, the dedicated telephone line and, if necessary, network cabling, hub and other necessary networking equipment will be borne solely by Customer.

**DELIVERY AND IMPLEMENTATION**

Allscripts will arrange for shipment by common carrier of Products provided to Customer from Allscripts, with the cost of shipping and transportation to be borne by Customer. Risk of loss to the Products will remain with Allscripts until Delivery. For Equipment purchased by Customer from Allscripts, good and merchantable title will pass to Customer upon Delivery. "Delivery", when used in this Agreement shall mean with respect to any item of Software, the first to occur of: (i) the delivery of possession of the first copy or product master into a device designated by Customer for such purpose, (ii) communication to Customer of access codes that allow Customer to take possession of the first copy or product master, (iii) the delivery by Allscripts of the first copy or product master in person to Customer or to any common carrier or delivery service for transport to Customer, or (iv) the delivery by Allscripts of written authorization for duplication of existing copies in the Customer's possession. With respect to any item of Equipment, "Delivery" shall mean the delivery of the Equipment by Allscripts or the supplier of the Equipment to a common carrier or delivery service for transport to the Customer or to any location specified by or on behalf of the Customer. Following Delivery, each party will install those items to be installed by that party in accordance with the system environment specifications. Allscripts will perform software implementation services and provide initial training on the use of the Products to Customer's personnel in accordance with the Statement of Work attached hereto. Allscripts will provide subsequent and optional Site Coordinator training and on-site training and support, at its then-current rates, plus expenses. Customer authorizes Allscripts to access any third party's system used by Customer in order to implement the interfaces requested by Customer and Customer represents to Allscripts that it has the right and authority to grant the access.

**SUPPORT SERVICES**

Allscripts will provide technical services to design, code, test and deliver amendments or alterations to the Software necessary to correct or provide a solution to any programming error attributable to Allscripts that has caused the Software, when implemented and operated in accordance with Allscripts' then current system environment specifications, not to perform substantially as described in the then current user-orientated instructions for the operation of the Software in the form distributed by Allscripts to its customers generally (the "Documentation") ("Support Services"). The Support Services will be promptly provided after Customer has identified and notified Allscripts of any error in accordance with Allscripts' reasonable reporting procedures as in effect from time-to-time. Allscripts will also provide reasonable telephone consultation in the use and operation of the Products during the hours of 8:00 A.M. through 6:00 P.M. Central standard time on weekdays, except Allscripts' holidays. Allscripts support staff are available by beeper at all other times for emergency issues. To enable Allscripts to deliver Support Services, Customer shall establish and maintain connectivity between Allscripts and Customer as required by Allscripts' then current system environment specifications. In addition, Allscripts will deliver to Customer, from time-to-time, updates of the Software that Allscripts elects to provide to its customers generally, and does not market separately. Customer agrees to test, and if operable, accept and use all updates, amendments and alterations to the Software furnished by Allscripts hereunder. Support Services shall be provided only for the most recent release of Software and the next prior release.

**FEES AND PAYMENTS**

Allscripts shall invoice Customer, and Customer will pay to Allscripts, fees attributable to the Products, as and when due based on the attached Payment Schedule. Invoices are due and payable when received. Invoices not paid within 30 days of the invoice date shall be subject to a late charge of one and one-half percent (1 1/2%) per month or the maximum lawful rate, whichever is lower. Except to the extent that Customer demonstrates that it is legally exempt, Customer is responsible for payment of any federal, state or local excise, sales, use or similar taxes assessed with respect to the Products provided and sold hereunder, as well as any transaction-based charges levied by third parties in connection with Customer's use of the Products.

The dollar value of any Products not paid for by, or provided at a reduced charge to, Customer and received by Customer under this Agreement, are "discounts or other reductions in price" to Customer under Section 1128B(b)(3)(A) of the Social Security Act [42 U.S.C. 1320a-7b(b)(3)(A)]. To the extent applicable, Customer shall disclose the discounts or other reduction in price under any state or federal program that provides cost or charge based reimbursement to Customer for the Products provided under this Agreement.

**LIMITED WARRANTY**

Allscripts warrants that the Software will materially conform to all operational features in the Documentation for a warranty period commencing on the "Go Live Date" and continuing for 90 days when the Software is used by a Product, the date that Customer can process actual data in the operation of Customer's business, for example, creating a prescription, creating a charge form, dictating or creating a note, or recording a treatment. Customer must notify Allscripts in writing within 30 days of the discovery of any material defect in the Software. If the Software is found to be materially defective by Allscripts, Allscripts will design, code, test and deliver amendments or alterations to the Software necessary to correct or provide a solution to any programming error attributable to Allscripts that has caused the Software to fail to perform as warranted above. Third party software products or Equipment distributed by Allscripts are warranted by their manufacturers and more specific warranties may accompany such products. Customer must notify Allscripts in writing within 10 days of Delivery if a third party software product or item of Equipment does not conform with its warranty and Allscripts shall use its reasonable commercial effort, consistent with industry standards, to obtain the repair or replacement of the nonconforming item with product that conforms to the warranty. Allscripts warrants that Services provided under this Agreement will be performed professionally, in a workmanlike manner, and by individuals with appropriate skills and expertise. Customer must notify Allscripts promptly if Customer is dissatisfied with the performance of any Services. If Allscripts agrees that performance was materially below the level of competence reasonably associated with the Services, Allscripts will arrange for the performance to be raised to the warranted level and, if necessary, for the Services to be re-performed.

THE ABOVE IS A LIMITED WARRANTY AND IT IS THE ONLY WARRANTY MADE BY ALLSCRIPTS WITH RESPECT TO THE SOFTWARE, EQUIPMENT, SERVICES, AND THIRD PARTY PRODUCTS. ALLSCRIPTS DOES NOT MAKE, NOR DOES THE CUSTOMER RECEIVE, ANY OTHER WARRANTY, WHETHER EXPRESS OR IMPLIED, AND ALL WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, AND/OR COMPATIBILITY WITH CUSTOMER'S EXISTING COMPUTER HARDWARE, SOFTWARE SYSTEM AND/OR NETWORK ARE EXPRESSLY EXCLUDED. CUSTOMER IS SOLELY RESPONSIBLE FOR IMPLEMENTING APPROPRIATE VIRUS PROTECTION PROCEDURES AND TOOLS AND SYSTEM AND NETWORK SECURITY MEASURES TO PREVENT CORRUPTION OF, OR UNAUTHORIZED ACCESS TO, THE SOFTWARE AND RELATED DATA. THE FOREGOING LIMITED WARRANTY AND ASSOCIATED REMEDIES FOR THE SOFTWARE, EQUIPMENT, SERVICES AND THIRD PARTY PRODUCTS ARE CUSTOMER'S SOLE AND EXCLUSIVE WARRANTY OF PERFORMANCE REGARDING THE SOFTWARE, EQUIPMENT, SERVICES AND THIRD PARTY PRODUCTS AND CUSTOMER'S SOLE AND EXCLUSIVE REMEDIES FOR BREACH OF THE LIMITED WARRANTY. ALLSCRIPTS SHALL HAVE NO LIABILITY WITH RESPECT TO ALLSCRIPTS' OBLIGATIONS UNDER THIS AGREEMENT FOR CONSEQUENTIAL, EXEMPLARY, SPECIAL, INDIRECT, PUNITIVE, OR INCIDENTAL DAMAGES, EVEN IF ALLSCRIPTS HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES, INCLUDING, WITHOUT LIMITATION, DAMAGES FOR LOSS OF GOODWILL, WORK STOPPAGE, COMPUTER FAILURE OR MALFUNCTION, OR ANY AND ALL OTHER

COMMERCIAL DAMAGES OR LOSSES, PERSONAL INJURY OR PROPERTY DAMAGE. THIS EXPRESS WARRANTY IS IN LIEU OF ALL LIABILITIES OR OBLIGATIONS OF ALLSCRIPTS FOR DAMAGES ARISING OUT OF OR IN CONNECTION WITH THE DELIVERY, USE, OR PERFORMANCE OF THE SOFTWARE, EQUIPMENT, SERVICES, OR THIRD PARTY PRODUCTS. IN NO EVENT SHALL ALLSCRIPTS' LIABILITY HEREUNDER, WHETHER ARISING UNDER CONTRACT, TORT OR WARRANTY, EXCEED THE SOFTWARE LICENSE FEES ASSOCIATED WITH THE APPLICABLE PRODUCT PAID BY THE CUSTOMER FOR THE MOST RECENT 12 MONTH PERIOD OF THIS AGREEMENT.

## INTELLECTUAL PROPERTY INDEMNITY

Allscripts is the owner of the Software, or has adequate rights to license to Customer the use of the Software.  Allscripts will, at its expense, defend against and pay any final judgment against Customer arising out of any claim that any Software infringes a U.S. copyright or a U.S. patent issued as of the effective date of the Payment Schedule with respect to the Software, or misappropriates a trade secret, provided that (i) Customer promptly notifies Allscripts in writing of the claim or action and (ii) Allscripts has sole control of the defense and settlement of the claim or action.  In defending against the claim or action, Allscripts may at its option (a) consent, (b) settle, (c) procure for Customer the right to continue using the Software, or (d) modify or replace the Software so that it no longer infringes, to the extent that the exercise of any option does not result in a material adverse change in the material operational characteristics of the Software, and so long as equivalent functions and performance provided by the Software remain following implementation of the option.  If Allscripts concludes in its judgment that none of the foregoing options is reasonable or practicable, then Allscripts may terminate the license to the Software, Customer will return the original and all whole or partial copies of the Software to Allscripts and, only if Customer has purchased a term license, Allscripts shall refund or credit to Customer an amount equal to the pro rata portion of the license fee paid by Customer proportionate to the remainder of the license term.  Allscripts has no liability with respect to patent infringement or trade secret misappropriation arising out of modifications of the Software made to Customer's order or specification or use of the Software in combination with other software, products or equipment not specified in this Agreement.

## CUSTOMER RESPONSIBILITY

Customer acknowledges that it is solely responsible for inputting and retrieving data from the Products, and for the accuracy and adequacy of information and data furnished for processing.  CUSTOMER ACKNOWLEDGES THAT IT SHALL HAVE FULL RESPONSIBILITY FOR THE CARE AND WELL BEING OF ITS PATIENTS, AND ANY RELIANCE BY CUSTOMER UPON THE PRODUCTS SHALL NOT DIMINISH THAT RESPONSIBILITY.

## HIPAA COMPLIANCE

Allscripts shall comply with all provisions of the Health Insurance Portability and Accountability Act and the regulations promulgated thereunder (collectively "HIPAA") applicable to a Business Associate in connection with its use and disclosure of Protected Health Information ("PHI"), as those terms are defined in HIPAA. In particular, Allscripts will: (i) not use or further disclose PHI other than as permitted or required by the Agreement or as required by law; (ii) use appropriate safeguards to prevent use or disclosure of PHI other than as provided for by the Agreement; (iii) implement administrative, physical, and technical safeguards that reasonably and appropriately protect the confidentiality, integrity, and availability of the electronic PHI that Allscripts creates, receives, maintains, or transmits on behalf of Customer, (iv) report to Customer any use or disclosure of PHI not provided for by the Agreement or any security incident of which it becomes aware;  (v) ensure that any agents, including a subcontractor, to whom it provides PHI received from, or created or received by it on behalf of, Customer agree to the same restrictions and conditions that apply to it with respect to such information; (vi) make available PHI in accordance with § 164.524 of the HIPAA regulations; (vii) make available PHI for amendment and incorporate any amendments to PHI in accordance with §164.526 of the HIPAA regulations; (viii) make available the PHI required to provide an accounting of disclosures in accordance with § 164.528 of the HIPAA regulations; (ix) make its internal practices, books, and records relating to the use and disclosure of PHI received from, or created or received by it on behalf of, the Customer available to the Secretary of the U.S. Department of Health and Human Services for purposes of determining the Customer's compliance with HIPAA; and (x) at termination of the Agreement, if feasible, return or destroy all PHI received from, or created or received by it on behalf of, Customer that it still maintains in any form and retain no copies of such information or, if such return or destruction is not feasible, extend the protections of the contract to the information and limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible.

Notwithstanding the foregoing, Allscripts may use or disclose PHI for any of the following purposes: (i) loading Allscripts software at Customer's site; (ii) interfacing Allscripts software with other software used by Customer; (iii) training Customer and its users in the use of the Allscripts systems and software; (iv) providing on-site support services to Customer and its users; (v) providing help desk support services to Customer and its users; (vi) repairing the Allscripts systems or software; (vii) upgrading the Allscripts systems or software; (viii) updating information on the Allscripts software; (ix) transmitting prescriptions, dictations, claims, orders, results or other records as requested by Customer, its users and/or the patient; (x) to another covered entity, either directly or through its business associate, in connection with a use for which the HIPAA privacy rule allows such disclosure, provided that the receiving covered entity, either directly or through its business associate, represents to Allscripts that (1) it has or had a relationship with the individual who is the subject of the PHI being requested, (2) the PHI pertains to such relationship and (3) the PHI will be used only for the treatment activities of the receiving covered entity, a purpose listed in paragraph (1) or (2) of the definition of "health care operations" under the HIPAA privacy rule, for  health care fraud and abuse detection or compliance, or for the receiving covered entity's payment activities; (xi) any other purpose which supports the intended use of the Allscripts systems and software by Customer or its users; (xii) any other purpose which requires consent or authorization of the patient, if such consent or authorization is obtained; or (xiii) for its proper management and administration or to carry out its legal responsibilities. Allscripts may also de-identify and aggregate PHI, which it may then use or disclose to others for its own purposes.

Customer shall (i) notify Allscripts of any limitation(s) in its notice of privacy practices of Customer in accordance with 45 C.F.R. § 164.520, to the extent that such limitation may affect Allscripts' use or disclosure of PHI; (ii) notify Allscripts of any changes in, or revocation of, permission by an individual to use or disclose PHI, to the extent that such changes may affect Allscripts' use or disclosure of PHI; and (iii) notify Allscripts of any restriction to the use or disclosure of PHI that Customer has agreed to in accordance with 45 C.F.R. § 164.522, to the extent that such restriction may affect Allscripts' use or disclosure of PHI.

Customer may terminate this Agreement if Customer determines that Allscripts has violated a material term of the preceding two paragraphs of this section and Allscripts does not cure such violation within thirty (30) days of receipt of written notice from Customer.

If during the term of this Agreement, Customer is required to fulfill a mandatory technical requirement under HIPAA and such requirement is (i) applicable to Customer as a provider of health care, (ii) requires the adaptation of the Software, (iii) cannot be accomplished by Customer through the use of procedures, tools, programs or utilities available to Customer at a commercially reasonable cost, (iv) can reasonably be supported by the Software in a manner intended for its use, and (v) becomes effective, or is scheduled to become effective during the term of this Agreement (hereinafter "Mandatory Requirement"), Allscripts shall either (i) enhance or upgrade the Software or (ii) create a new product that it markets separately to its customers in general to enable its customers to support the Mandatory Requirement, provided that, if use of the Software is covered by a term license, then Allscripts' commitment will apply to Customer only if Customer is receiving, and is current in its payment of, Support Services for a Software version that is then supported by Allscripts for its customers in general. The parties acknowledge that the scope of any enhancement, upgrade or new product necessary to enable Customer to support a Mandatory Requirement cannot be determined at this time.  Accordingly, Customer shall have an option to implement any enhancements or upgrades, or license any new products, that Allscripts provides in connection with such Mandatory Requirement at a price not to exceed Allscripts' standard price for the enhancements, upgrades or new products.  Customer and users will obtain from their patients all requisite written consents in order to utilize the capabilities of the Products in compliance with applicable laws and regulations, including, but not limited to HIPAA, and to carry out the purposes of this Agreement.

Initials

3

**TERMS APPLICABLE TO TOUCHWORKS PHYSICIAN HOMEBASE®**
Advertisements/Links To Or From Third Party Websites Advertisements and/or links to other World Wide Web sites or resources may be available via the TouchWorks Physician Homebase product. ALLSCRIPTS DOES NOT RECOMMEND OR ENDORSE THE USE OF ANY THIRD PARTY WEBSITES, RESOURCES, PRODUCTS OR SERVICES OF ANY PERSON. ALLSCRIPTS ASSUMES NO LIABILITY TO CUSTOMER, CUSTOMER'S AUTHORIZED USERS OR ANYONE ELSE FOR USE OF ANY THIRD PARTY WEBSITES, ADVERTISEMENTS, RESOURCES, PRODUCTS OR SERVICES ACCESSABLE VIA TOUCHWORKS PHYSICIAN HOMEBASE. Customer acknowledges and agrees that Allscripts shall not be responsible or liable for any loss or damage of any kind incurred in connection with any third party websites, advertisements, products, services or resources or as the result of the presence of such third parties or links on TouchWorks Physician Homebase.

Content Any content available via the TouchWorks Physician Homebase product is not a substitute for the professional judgment of healthcare providers in diagnosing and treating patients. Allscripts does not give medical advice nor does it provide medical or diagnosis services. Allscripts is not responsible for the accuracy, timeliness, completeness, appropriateness or helpfulness of any content. Reliance by Customer and Customer's users upon information and content obtained through TouchWorks Physician Homebase is solely at the risk of Customer and Customer's users.

Customer's Content At Customer's request, Allscripts may place Customer's tradename or logo and links to other content requested by Customer on the TouchWorks Physician Homebase product. Customer shall provide Allscripts with all materials necessary to customize the TouchWorks Physician Homebase product in a format specified by Allscripts. Customer assumes sole responsibility for (a) acquiring any authorization(s) necessary for hypertext links to third party web sites, and (b) ensuring that Customer's tradename, logo and any hypertext links do not infringe or violate any right of any third party. Allscripts reserves the right, after notice to Customer, but in Allscripts' sole discretion, to exclude or remove from the TouchWorks Physician Homebase product any hypertext links to third party web sites, Customer's tradename or logo, or other content supplied by Customer which in Allscripts' sole reasonable discretion, may violate or infringe any law or third party rights or which otherwise exposes or potentially exposes Allscripts to civil or criminal liability or public ridicule. Customer shall not request that Allscripts place or cause to be placed on the TouchWorks Physician Homebase product any content containing any materials that are obscene, threatening, malicious, which infringe on or violate any applicable law or regulation or any proprietary, contract, moral, privacy or other third party right, or which otherwise exposes, or potentially exposes, Allscripts to civil or criminal liability.

**TERMS APPLICABLE TO TOUCHWORKS CHARGE™**
TOUCHWORKS CHARGE CONTAINS FUNCTIONS SUPPORTING THE PREPARATION AND SUBMISSION OF CLAIMS. CUSTOMER IS SOLELY RESPONSIBLE (AND ALLSCRIPTS IS NOT RESPONSIBLE) FOR THE PROPER, COMPLETE AND ACCURATE SUBMISSION OF CLAIMS, INCLUDING WITHOUT LIMITATION THE DETERMINATION OF PROPER BILLING AND DIAGNOSIS CODES AND THE MAINTENANCE OF PATIENT MEDICAL RECORDS CONTAINING APPROPRIATE DOCUMENTATION OF THE SERVICES BILLED. ALLSCRIPTS SHALL HAVE NO LIABILITY WHATSOEVER FOR IMPROPER CLAIMS SUBMITTED BY CUSTOMER AS A RESULT OF CUSTOMER'S USE OR MISUSE OF TOUCHWORKS CHARGE. CUSTOMER AGREES TO INDEMNIFY AND HOLD HARMLESS ALLSCRIPTS AND ITS SUPPLIERS FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES OR PENALTIES ARISING OUT OF OR RELATED TO CUSTOMER'S MISUSE OF TOUCHWORKS CHARGE.

CUSTOMER MAY NOT USE TOUCHWORKS CHARGE TO PERFORM MEDICAL DIAGNOSTIC FUNCTIONS, SET TREATMENT PROCEDURES OR SUBSTITUTE FOR THE MEDICAL JUDGMENT OF A PHYSICIAN OR QUALIFIED HEALTHCARE PROVIDER. WHEN SELECTING A NARRATIVE CONDITION OR CODED DIAGNOSIS (ICD-9-CM), CUSTOMER MUST MAKE AN INDEPENDENT AND INFORMED JUDGMENT, BASED UPON THE PATIENT'S CONDITION AND SYMPTOMS AND/OR A PHYSICIAN'S SUBMITTED DIAGNOSIS, TO SELECT A DIAGNOSIS CODE APPROPRIATE FOR THAT PATIENT. NEITHER ALLSCRIPTS NOR ITS LICENSORS MAKE ANY REPRESENTATION OR WARRANTY REGARDING THE APPROPRIATENESS OF ANY OF THE NARRATIVE OR CODED DIAGNOSIS CODES DISPLAYED FOR ANY OR ALL PATIENTS.

SINCE IT IS POSSIBLE THAT A PAYOR'S LOCAL MEDICAL REVIEW POLICIES MAY BE IN EFFECT PRIOR TO THEIR RECEIPT OR UPDATE BY ALLSCRIPTS OR ITS LICENSORS, CUSTOMER, AS A PROVIDER UNDER FEDERAL HEALTH CARE PROGRAMS, ASSUMES RESPONSIBILITY FOR THE ACCURACY OF ALL CLAIMS SUBMITTED FOR SERVICES PERFORMED FOR MEDICARE BENEFICIARIES.

**TERMS APPLICABLE TO TOUCHWORKS ORDER™**
CUSTOMER MAY NOT USE TOUCHWORKS ORDER TO PERFORM MEDICAL DIAGNOSTIC FUNCTIONS, SET TREATMENT PROCEDURES OR SUBSTITUTE FOR THE MEDICAL JUDGMENT OF A PHYSICIAN OR QUALIFIED HEALTHCARE PROVIDER. WHEN SELECTING A NARRATIVE CONDITION OR CODED DIAGNOSIS (ICD-9-CM), CUSTOMER MUST MAKE AN INDEPENDENT AND INFORMED JUDGMENT, BASED UPON THE PATIENT'S CONDITION AND SYMPTOMS AND/OR A PHYSICIAN'S SUBMITTED DIAGNOSIS, TO SELECT A DIAGNOSIS CODE APPROPRIATE FOR THAT PATIENT. NEITHER ALLSCRIPTS NOR ITS LICENSORS MAKE ANY REPRESENTATION OR WARRANTY REGARDING THE APPROPRIATENESS OF ANY OF THE NARRATIVE OR CODED DIAGNOSIS CODES DISPLAYED FOR ANY OR ALL PATIENTS.

SINCE IT IS POSSIBLE THAT A PAYOR'S LOCAL MEDICAL REVIEW POLICIES MAY BE IN EFFECT PRIOR TO THEIR RECEIPT OR UPDATE BY ALLSCRIPTS OR ITS LICENSORS, CUSTOMER, AS A PROVIDER UNDER FEDERAL HEALTH CARE PROGRAMS, ASSUMES RESPONSIBILITY FOR THE ACCURACY OF ALL CLAIMS SUBMITTED FOR SERVICES PERFORMED FOR MEDICARE BENEFICIARIES.

**TERMS APPLICABLE TO TOUCHWORKS NOTE™**
TouchWorks Note contains the Medcin nomenclature. The Medcin nomenclature and its related files are a work in progress, are not complete, and will always contain errors due to the constant changes in the field of medicine as it evolves. The Medcin Expert file contains diagnostic information to support a process called Intelligent Prompting, the sole intent of which is to provide a list containing some relevant findings for the documentation of what the provider has already done. The Intelligent Prompting list, or any other list provided by Medcin or by applications using Medcin, should never be used for decision support as it contains tests, therapy and other items which, although relevant for some patients, would be harmful or even fatal for other patients. The findings prompted by the Intelligent Prompting option are for purposes of documentation only and are not meant to suggest any procedures, medications or physical findings for the patient.

Customer agrees that the sole and exclusive responsibility for any medical decisions or actions with respect to the patient's medical care and for determining the accuracy, completeness, or appropriateness of any diagnostic, clinical, billing, or medical information provided by the program and any underlying clinical database resides solely with the health care provider. Allscripts and Medicomp Systems, Inc. assume no responsibility for how such materials are used. The choice with regard to when and how to use this program and any database for patient medical records is the health care provider's responsibility and this program and any database is to be used at the health care provider's discretion. Customer understands and agrees that the responsibility for the medical treatment, and the billing for such treatment, rests with the health care provider and revolves around the health care provider's judgment and the health care provider's analysis of the patient's condition. In addition, the Customer agrees that the Intelligent Prompting Option is a tool available to the health care provider for augmenting the documentation of the patient's electronic medical records and is not intended in any way to eliminate, replace, or substitute for, in whole or in part, the health care provider's judgment and analysis of patient's condition.

**TERMS APPLICABLE TO TOUCHWORKS RX+™**

TouchWorks Rx+ facilitates point-of-care electronic prescribing through Allscripts' proprietary prescribing system. Customer will use its best efforts to have all physicians at the Site input into the TouchWorks Rx+ system all of the original prescriptions they write at the Site, regardless of whether such prescriptions are to be dispensed at the Site. Customer will complete the SubSchedule attached to this Schedule.

Customer will be responsible for the assignment of access and usage privileges to users of the Product. Such assignment shall be in conformity with applicable laws and regulations, including but not limited to those related to proper licensure of users. Customer will be responsible for ensuring that the licensing information and the dates for permitted use of the Product are correctly entered and updated. Allscripts is not responsible for the granting or monitoring of user privileges to the Product nor for any incorrect entry or lack of updating of licensing information by Customer.

Because of the rapidly changing legal and regulatory environment (particularly with regard to state requirements applicable to electronic prescribing and dispensing of medication), the information in the Product may not be current, and accordingly, Customer should not rely solely upon the Product for such information. In particular, Customer is solely responsible for knowing and complying with all applicable state laws and regulations with respect to faxing or electronically transmitting a prescription.

The laws of each state may vary on their treatment of the Drug Enforcement Agency's ("DEA") classes of drugs. Customer is responsible for verifying that the DEA class is correct for each prescription that Customer or its permitted users transmit via electronic transmission. With respect to generic drugs, Customer is responsible for verifying that generic drugs, offered in their respective classes, are properly classified according to FDA regulations and guidelines. In prescribing generic drugs using the Product, Customer accepts sole responsibility for the prescription of the generic drug for the patient, the complete review of the drug, and an understanding of its proper uses. In selecting a generic drug, the Customer accepts sole responsibility for any payor issues arising due to classification of the generic drugs.

With respect to Drug Utilization Review (including, but not limited to, Drug to Drug interactions, Drug to Food interactions, Drug to Alcohol interactions, Dose Checking, Allergy Checking, and Prior Adverse Reaction Screening), the presence or absence of any warning through the Product does not imply that the drug(s) being prescribed, or having been prescribed, is or are suitable or safe for the patient being prescribed to, or any other patient. The clinical information presented by the Product is generalized and may not be appropriate for any given patient.

**CONFIDENTIALITY**

Allscripts and Customer shall take all steps and do all things reasonably necessary to ensure that the terms of this Agreement and information relating to the business of the other party acquired pursuant to this Agreement shall not be disclosed to others, provided, however, that the foregoing shall not apply to information: (i) that either party can show was known to it prior to disclosure by the other party; (ii) that is or becomes public knowledge through no fault of the party to whom disclosure is made, (iii) that is independently developed by the other party without reliance on the other party's information, (iv) that is required by law to be disclosed, or (v) that is necessary to be disclosed in order to carry out the purposes of this Agreement. Customer agrees that Allscripts shall have access to all information maintained by the Software and that such information may be used by Allscripts and may be disclosed by Allscripts to others, provided that, Allscripts will not make any PHI available to others except in accordance with the section entitled "HIPAA Compliance" above. This provision will survive the termination of this Agreement.

**TERM AND TERMINATION**

If use of the Software is covered by a subscription license, then this Agreement will automatically renew at the end of the initial subscription term for successive 12 month terms unless written notice of termination is given by a party at least 60 days prior to any term-end. Either party may terminate this Agreement upon prior written notice to the other party: (a) in the event of a material breach by the other party (other than for failure to comply with the terms and conditions of the license), unless the breach is cured within 30 days of the termination notice; or (b) in the event of a material breach by Customer of the terms and conditions of any Software license, or (c) in the event of the voluntary or involuntary bankruptcy, dissolution or insolvency of the other party. Upon termination of this Agreement, all amounts payable to Allscripts and/or credits to Customer in accordance with this Agreement shall be made promptly. Additionally, Customer will, at its expense, immediately uninstall and return to Allscripts the applicable Software that was terminated and any associated Equipment specified for return.

**MISCELLANEOUS**

- Customer agrees to designate a "Site Coordinator" whose daily duties will include, but not be limited to: (i) checking that the Products are functioning, (ii) managing inventory needs, when applicable, (iii) providing ongoing training to users, (iv) running reports to meet the Customer's needs, (v) acting as the primary contact between Customer and Allscripts.
- Each party shall secure and maintain professional liability and general liability insurance coverage as necessary to cover its risks pursuant to this Agreement, but not less than $1 million per occurrence and $2 million aggregate annual limits, and, upon request, provide the other party with a certificate of insurance evidencing such coverage.
- The parties are independent contractors and this Agreement confers no rights or benefits to any non-party.
- This Agreement is binding on the parties, their successors and assigns, provided that neither party may assign this Agreement without the prior written consent of the other party except for assignment to affiliates or as part of the sale by Allscripts of substantially all of the assets of the business to which this Agreement pertains.
- Failure by a party to enforce noncompliance with any term of this Agreement shall not act as a waiver of any right or remedy hereunder.
- Except for payment obligations, neither party shall be liable for failure or delay of performance for reasons beyond the reasonable control of that party.
- This Agreement shall be governed in accordance with the laws of the State of Illinois.
- All notices given under this Agreement shall be in writing and be deemed to have been given upon personal delivery, or delivery at the address provided below by overnight national courier providing written evidence of delivery, or by facsimile copy (to the fax number provided below) the next business day following transmittal.
- In the event that any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, the remaining provisions of the Agreement will not be affected, unless the absence of the invalidated provision adversely affects the substantive rights of the parties, in which case, the parties agree to replace any such provision or parts thereof with new provision(s) that closely approximate the economic and proprietary results intended by the parties.
- This Agreement, including all Schedules, or other attachments, constitutes the entire agreement between the parties with respect to the subject matter and supersedes all prior agreements and understandings related to its subject matter. No contrary terms or conditions of any subsequent Customer purchase order, no course of dealing, trade, custom or usage of trade, and no warranty or promise made during the course of performance, will vary or contradict the terms of this Agreement, unless expressly agreed to in writing.

Initials

5

PAYMENT SCHEDULE
TEN (10) YEAR TERM LICENSE AGREEMENT

Customer: Philadelphia Health & Education Corporation d.b.a. Drexel University College of Medicine

Initials: _____

This SCHEDULE is made as of November__, 2003 ("Effective Date"), by and between Allscripts and Customer. This Schedule is a part of the TouchWorks System Agreement dated November__, 2003 (the "Schedule Agreement"). In the event of an inconsistency between the terms of this Schedule and the terms of the Agreement, this Schedule shall govern and control. Unless expressly indicated to the contrary hereinbelow, the defined terms used in this Schedule shall have the meanings ascribed to them in the Agreement.

The pricing information reflected on this Payment Schedule shall be treated as a price quote that will expire on December 31, 2003 unless the Agreement is executed on or before such date.

| TouchWorks ™ PRODUCT Term: Ten (10) Year Term License | Number of Providers (Maximum) (Note 4) | Software License Fee Per Provider | Aggregate Based on 1060 MAXIMUM Number of Providers | | Other Comments |
|---|---|---|---|---|---|
| | | | Software License Fee | Annual Support Fee | |
| TouchWorks Base (PHS, WP, Repository, SnapShot) | 400 | $ 190 | $ 76,000 | $ 25,130 | |
| TouchWorks Rx+ | 400 | $ 293 | $ 117,000 | $ 38,687 | |
| TouchWorks Tx+/Script Rx+ | | | | | |
| TouchWorks FirstFill Add-on | | | | | |
| TouchWorks Charge | 400 | $ 415 | $ 166,000 | $ 54,690 | |
| TouchWorks Document | 400 | $ 268 | $ 107,000 | $ 35,381 | |
| TouchWorks Dictate (Note 1) | 400 | $ 118 | $ 46,000 | $ 15,210 | |
| TouchWorks Transcribe | | | | | |
| TouchWorks Result | 400 | $ 218 | $ 87,000 | $ 28,788 | |
| TouchWorks Order | 400 | $ 218 | $ 87,000 | $ 28,788 | |
| TouchWorks Note | 400 | $ 318 | $ 127,000 | $ 41,894 | |
| TouchWorks Scan | 400 | $ 463 | $ 185,000 | $ 61,122 | |
| TouchWorks Pocket Library Dose Calculator | | | | | |
| TouchWorks Pocket Library Reference Reader | | | | | |
| TouchWorks Pocket Library DrugGuide | | | | | |
| TouchWorks Pocket Library Peds.Est | | | | | |
| TouchWorks Pocket Library Pocket Anatomy | | | | | |
| TouchWorks Pocket Library Pocket Exercises | | | | | |
| MEDCIN | 400 | $ 50 | | $ 20,000 | This is an annual subscription, not support |
| PIER | | | | | |
| LMRP Database - 1st Set | | | | | |
| LMRP Database - Each Additional Set | | | | | |
| LMRP Database - CCI edits | | | | | |
| Subtotal | 400 | $ 2,545 | $ 993,000 | $ 350,000 | |
| | | | | | |
| Total | 400 | $ 2,545 | $ 993,000 | $ 350,000 | |

| Other PRODUCT or SERVICE | One-Time Fees | Annual Fees | Aggregate Monthly Fees |
|---|---|---|---|
| Equipment - Purchased from Allscripts | TBD | | |
| Remote Scanning (Note 3) | | | |
| Interface and Data Conversion Fees | $ 155,000 | | |
| Interface Support Fees | | $ 31,000 | |
| Implementation Fees (Note 2) | $ 350,000 | | |
| Monthly ASP Costs | | | |
| Site Coordinator Training | | | |
| Total | $ 505,000 | $ 31,000 | $ - |

Funding:

| | |
|---|---|
| | $ - |
| | $ - |

Note 1:  If the number of devices on which TouchWorks Dictate is loaded exceeds the number of Providers for which Customer has paid license fees, then Allscripts may increase the number of Providers for which Customer must pay license fees for TouchWorks Dictate to equal the number of devices.
Note 2:  The Implementation Fees cover only the services included in the Statement of Work dated _____, provided by Allscripts to Customer.
Note 3:  Use of Remote Scanning Software is limited to 0 sites.
Note 4:  For the purposes of TouchWorks Transcribe, the term "Provider" shall be deemed to mean a typist and the license limitation applies to typists.
Note 5:  Optional pricing for St. Christopher's additional 200 Providers will be held until December 31, 2003.  The additional 200 providers will incur an additional license fee cost of $498,000 and additional Annual Support of $166,000.  Also an Annual Subscription for Medcin of $10,000.  Appropriate documentation will be required to elect this option.
Note 6:  Customer can purchase additional training services at $1,100 per day for up to twelve (12) months from the Effective Date.

The next page sets forth terms and provisions related to Fees.

Continued on Next Page
Agr.Data 7/25/03

PAYMENT SCHEDULE - continued
TEN (10) YEAR TERM LICENSE AGREEMENT

Invoiced as Follows:

Software License Fees for new Agreements or for Products added to existing Agreements will be invoiced on a Product-by-Product basis and will be based on the following milestones:
> 20%  on Effective Date of Agreement
> 30%  on Software Delivery Date
> 30%  on the earlier of Project Team Training completion or 45 days following the Software Delivery Date
> 20%  on the earlier of Go Live Date or 90 days following the Software Delivery Date

Software License Fees for Providers added to existing Products and Agreements will be invoiced on a Product-by-Product basis and be based on the following milestones:
> 100% on Schedule Effective Date

Software License Fees for TouchWorks Pocket Library Reference Reader and titles, Touchworks Patient Ed and all third party software will be invoiced on a Product-by-Product basis and be based on the following milestones:

>100% on Software Delivery Date

Any increase in the Maximum Number of Providers will require execution of an amendment to this Agreement or a new agreement between the parties.

Implementation, Data Conversion and Interface Fees shall be invoiced based on the following milestones:

> 5% on Scope Document Delivery
>15% on Project Team Training completion
>10% on Simulation (Phase 1)
>10% on Go Live (Phase 1)
>15% on Simulation (Phase 2)
>10% on Live (Phase 2)
>15% on Simulation (Phase 3)
>10% on Live (Phase 3)
>10% on Final Acceptance

Implementation fees do not include travel and lodging expenses, which will be invoiced as incurred.

Annual Support Fees will commence as of the Phase 1 Go Live Date (the "Initial Billing Date") for an initial period of 12 months ("Annual Support Period"). Allscripts will invoice Customer for 50% of the initial annual Support Fees as of the Initial Billing Date. Allscripts will increase the Annual Support Fees once initiation, (i) more than one hundred (100) providers go live, then the Support fees will increase with each additional group of fifty (50) providers brought live by 10% of the initial annual Support Fees, until reaching a total of 100% of Annual Support Fees, or (ii) upon the second anniversary of the Initial Billing Date Annual Support Fees will be increased to a total of 100%.  Initial Annual Support Fees are set forth in the table.

Annual Support Fees may be adjusted by Allscripts, on a Product-by-Product basis, as of January 1 of each calendar year, in an amount not greater than the greater of (i) five percent (5%) per annum or (ii) the "Annual Change in CPI." Any increase will apply to Customer for the next Annual Support Period that commences following such increase.  Annual Support Fee adjustments will be reflected on Customer's invoices.  Either party may discontinue Support Services at any time effective at the end of the applicable paid Annual Support Period following no less than 30 days prior written notice to the other.  If Support Services are discontinued by Customer, Customer may, at a later date, resume Support Services then currently available and at then current rates following not less than 30 days prior written notice to Allscripts and upon payment to Allscripts of the total amount of Support Fees accrued and unpaid attributable to the period of Support Service discontinuation.

"Annual Change in CPI" means the change, if any, in the Consumer Price Index, all items, all urban consumers, U.S. city average (1982-84 = 100), published by the Bureau of Labor Statistics of the United States Department of Labor (the "CPI") and most recently reported as of January 1, over the CPI reported twelve (12) months earlier.  If the CPI shall be converted to a base year other than 1982-84, or otherwise revised or discontinued, the determination of the CPI shall be made using a generally accepted conversion/substitution factor (selected by Allscripts) which reasonably approximates the CPI as described above.

Site Coordinator Class Fees will be invoiced upon confirmation of the scheduled class date and are payable in full prior to the first day of class.

Equipment Purchased will be invoiced in full as of the date of Delivery.

Interfaces and Data Conversions - Description and Fees:

| Interface Description | Purchased? | Convert Data? | Type | Additional Description |
|---|---|---|---|---|
| Reg/Sched | Yes | No | IDX | 1 IDX at no charge, 1 for Signature |
| Patient List | No | | | |
| Charge | Yes | | IDX | |
| Transcription | Yes | No | | |
| Voice | Yes | | | |
| Result | Yes | No | | |
| Order | Yes | | | |
| Prescribe | No | | | |
| Allergies | No | No | | |
| Medications | No | No | | |
| Text Input Utility | No | | | |
| Imaging | No | | | |
| Custom Formulary | No | | | |

| Interface Fees | # Purchased | for Interfaces | Conversion | Cost | Support Cost |
|---|---|---|---|---|---|
| Reg/Sched | 2 | $ 15,000 | $ - | $ - | $ 3,000 |
| Patient List | | $ - | $ - | $ - | $ - |
| Charge | 1 | $ - | $ - | $ - | $ - |
| Transcription | 1 | $ 10,000 | $ - | $ - | $ 2,000 |
| Voice | 1 | $ 10,000 | $ - | $ - | $ 2,000 |
| Result | 4 | $ 60,000 | $ - | $ - | $ 12,000 |
| Order | 4 | $ 60,000 | $ - | $ - | $ 12,000 |
| Prescribe | | $ - | $ - | $ - | $ - |
| Allergies | | $ - | $ - | $ - | $ - |
| Medications | | $ - | $ - | $ - | $ - |
| Text Input Utility | | $ - | $ - | $ - | $ - |
| Imaging | | $ - | $ - | $ - | $ - |
| Custom Formulary | | $ - | $ - | $ - | $ - |
| Total | 13 | $ 155,000 | $ - | $ - | $ 31,000 |

Note: Additional Interfaces are available for an additional fee and may be necessary as determined by the final project scope.

Agr.Date 7/25/03

• Allscripts and Customer agree not to solicit for hire, directly as employees or indirectly as contractors or subcontractors, or in any other capacity, any person who is an employee of the other during the term of this Agreement.

IN WITNESS WHEREOF, authorized representatives of the parties have signed this Agreement

Customer: Philadelphia Health & Education Corporation d.b.a. Drexel University College of Medicine

By: _Pamela Archibald_

Name: _JAMES A ARCHIBALD_

Title: _SR) VP for Health Sciences_

Date: _5/20/04_

Business Address: _245 N. 15th St, MS # 400_
_Phila., Pa 19102_

Fax: _215-762-1639_

e-mail: _jaa34@drexel.edu_

Allscripts:

By: _Joseph E. Carey_

Name: _Joseph E. Carey_

Title: _C.O.O._

Date: _6/4/04_

Business Address: 2401 Commerce Drive, Libertyville, IL  60048

Sales Executive: _____

Fax: 800-477-4619

**Customer's Billing Information:**

Name: _____

Billing Address: _____

_____

Fax: _____

Account Number: _____

**Attachments**

•Site Schedule •Payment Schedule •Equipment Schedule •SubSchedule •Statement of Work •Addendum

## EQUIPMENT SCHEDULE

THIS SCHEDULE is made as of November __, 2003 (the "Effective Date"), by and between Allscripts and Philadelphia Health & Education Corporation d.b.a. Drexel University College of Medicine ("Customer.") This Schedule is a part of the TouchWorks System Agreement dated November __, 2003 (the "Agreement"), and, with respect to the Products, it modifies, supplements and amends the Agreement, and in the event of any inconsistency between the terms of this Schedule and the terms of the Agreement, the terms of this Schedule shall govern and control. In all other respects, the Agreement is and shall remain in full force and effect. Unless expressly indicated to the contrary hereinbelow, the defined terms used in the Schedule shall have the meanings ascribed to them in the Agreement. If Customer unilaterally cancels or changes any item of Equipment listed below after Allscripts has ordered such Equipment, Customer shall pay twenty (20%) of the applicable price thereof as a handling fee.

[Insert hardware configuration for purchased equipment]

TOUCHWORKS RX+™
SubSchedule

**PROVIDERS**

| Provider Name | DEA # | Site | Rx+ | First Fill | Check ONLY if Funded | Third Party Funder |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT B

ADDENDUM

by and between

**Philadelphia Health & Education Corporation
d/b/a as Drexel University College of Medicine,**

and

Allscripts, LLC

November __, 2003

PHL_A #1788066 v12

# Table of Contents

Page

1.   Taxes .......................................................................................................... 1
2.   COM's Confidential Information ................................................................ 1
3.   Status of MDRX .......................................................................................... 2
4.   Non-Assignment ......................................................................................... 3
5.   Use of Subcontractors ................................................................................ 3
6.   Counterparts ................................................................................................ 4
7.   Standards of Performance .......................................................................... 4
8.   Term and Termination ................................................................................ 4
9.   Indemnification ........................................................................................... 5
10.  Notices ........................................................................................................ 7
11.  Insurance ..................................................................................................... 8
12.  Access to Books and Records .................................................................... 9
13.  Construction and Jurisdiction .................................................................... 10
14.  Compliance with Laws ............................................................................... 10
15.  Changes to Scope of Services .................................................................... 11
16.  Travel Expenses ......................................................................................... 11
17.  Delivery ...................................................................................................... 11
18.  Implementation of Products ....................................................................... 12
19.  Payment Terms ........................................................................................... 12
20.  Maintenance and Support Services ............................................................ 13
21.  Ownership of Protected Health Information; Prohibition Against Aggregated Use ........ 13
22.  Acceptance Testing ..................................................................................... 13
23.  Procurement of Additional Third-Party Products ..................................... 13
24.  Protection of Resources .............................................................................. 13
25.  Milestones ................................................................................................... 13
26.  Training ....................................................................................................... 14
27.  Products ....................................................................................................... 14
28.  Representations and Warranties ................................................................. 15
29.  New Products .............................................................................................. 16
30.  Dispute Resolution ..................................................................................... 16
31.  Limitation of Liability ................................................................................ 17
32.  Business Maintenance ................................................................................ 17
33.  Entire Agreement ........................................................................................ 18
34.  No Liens ...................................................................................................... 18
35.  Hosting ........................................................................................................ 18
36.  Marketing Efforts ....................................................................................... 18
EXHIBIT 1 Confidentiality Statement .............................................................. 20
EXHIBIT 2 Specifications .................................................................................. 22
EXHIBIT 3 Fee Schedule, Implementation Price and Implementation Milestones .................. 23
EXHIBIT 4 Maintenance and Support Service Levels ...................................... 24
EXHIBIT 5 Equipment Warranty ...................................................................... 28
EXHIBIT 6  Marketing Program ........................................................................ 29

## ADDENDUM

THIS ADDENDUM ("Addendum"), dated as of November __, 2003 (the "Effective Date"), is made and entered into by and between Philadelphia Health & Education Corporation, d/b/a as Drexel University College of Medicine, a Pennsylvania not-for-profit corporation, ("COM"), and Allscripts, LLC, a Delaware limited liability company ("MDRX"), and modifies that certain Touchworks Systems Agreement between the parties of even date herewith, (the "TSA") and Business Associate Agreement (the "BAA") (the TSA, BAA and this Addendum, the "Agreement") entered into by the parties effective on or about the Effective Date. In the event of a conflict between the terms of the TSA or BAA, and the terms of this Addendum, the terms of the Addendum shall take precedence. Capitalized terms used herein and not defined shall have the meanings ascribed to such terms in the TSA and BAA.

The Parties agree that St. Christopher's Hospital for Children ("SCHC") may, upon its execution of an Accession Agreement ("AA"), access and use the services, as such are defined in and pursuant to the terms of the Agreement, including this Addendum and a properly executed AA. Further, SCHC shall have sole responsibility for payment concerning products and services to the extent utilized by SCHC. In the event that SCHC's access to and use of the Services is terminated on account of SCHC's nonpayment, this Agreement with respect to the rights and obligations set forth in this Agreement between COM and MDRX shall continue in full force and effect, provided that COM shall take all reasonable actions necessary and requested by MDRX in order to preclude SCHC's continued access to and use of the services.

1. <u>Taxes</u>.   The first paragraph of Section "Fees and Payments" is hereby deleted.  COM represents that it is a tax-exempt corporation under Sections 501(c)(3) of the Internal Revenue Code of the United States, as amended.  Upon receipt of certificates evidencing COM's tax-exempt status, MDRX shall not collect or pay and sales or similar taxes based upon the sales of products and services pursuant to this Agreement and shall take no action to cause the provision of the services hereunder or the purchase of any products hereunder to be treated other than as a tax-exempt transaction.  In no event shall either party be responsible for any use, property, gross receipts, or other taxes levied against the other party to this Agreement, whether or not referenced in the TSA or BAA.  Upon request, COM shall provide MDRX with certificates evidencing its tax-exempt status.

2. <u>COM's Confidential Information</u>.  The second sentence of Section "Confidentiality" and Section "HIPAA Compliance" are hereby deleted.  In addition to the rights and duties set forth in Section "Confidentiality":

A. MDRX recognizes that COM's business interests require a confidential relationship between COM and MDRX.  COM's "Confidential Information" shall include COM's trade secrets, business plans, financial information, contracts, agreements, internal reports, patient rates and charges or any other pricing information, patient personal health and financial information, Protected Health Information, as defined in HIPAA, management systems, utilization review methodologies, security systems, auditing procedures, policies, techniques, concepts, programs, innovations, inventions and improvements. MDRX agrees, both during and after the term of this Agreement, to keep secret and to treat confidentially all of COM's Confidential Information, whether patentable, patented or not, and not to use or aid others in

using any such information in competition with COM. MDRX acknowledges that it is a business associate of COM, a covered entity subject to the Administrative Simplification Provisions of the Health Insurance Portability and Accountability Act of 1996, as amended, and regulated promulgated thereunder by the U.S. Department of Health and Human Services ("HIPAA"), agrees to comply with any obligation that federal or state privacy and security laws and regulations imposes upon a covered entity such as COM of its business associates, including the execution of the BAA. Upon termination of this Agreement, MDRX agrees to return to COM all property of COM, its parent and affiliates, if any, in its possession, including all computer disks and computer generated information. MDRX covenants that it will not disclose any of COM's Confidential Information to any third party, except for permitted subcontractors pursuant to the terms of this Paragraph 2.A., and MDRX further covenants that it will not, either directly or indirectly, copy, or cause to be copied, or otherwise duplicated or reproduced any of COM's Confidential Information. MDRX further covenants not to disclose or otherwise make known to any party, nor to issue or release for publication any articles or advertising or publicity matter relating to this Agreement or information in which the name of COM or any of its affiliate names are mentioned or used, directly or indirectly, unless prior written consent is granted by COM. Further, MDRX agrees that each employee or permitted subcontractor who provides any services to COM under this Agreement shall execute and furnish to COM a confidentiality statement in the form attached hereto as *Exhibit 1* and incorporated herein by reference. In no event shall such statement be construed to assign or limit any of the obligations of MDRX pursuant to this Agreement or the BAA. Notwithstanding the foregoing, MDRX may disclose COM's Confidential Information: (I) that is in the public domain without breach of this Agreement; (II) that becomes known to MDRX on a nonconfidential basis from a third party which is not prohibited from disclosing such information to MDRX by legal, contractual or fiduciary obligation; or (III) to the extent it is required to be disclosed pursuant to a judicial or court order, provided COM shall be given prior notice and an opportunity to object to such disclosure. The non-disclosure restrictions described above shall remain in effect after the termination date of this Agreement.

B. MDRX agrees that upon COM's request, MDRX will execute any and all applications, assignments and other legal instruments which COM reasonably shall deem necessary or convenient for the protection of COM's Confidential Information.

C. Because of the difficulty in measuring economic loss to COM as a result of any breach by MDRX of the provisions of this Paragraph 2, and because of the immediate and irreparable damage that may be caused to COM, for which it would have no other adequate remedy, MDRX agrees that COM, in addition to and without limiting any other remedy or right it may have, shall have the right to an injunction or other equitable relief in any court of competent jurisdiction. The existence of this right shall not preclude any other rights and remedies at law or equity which COM may have.

3. Status of MDRX.

A. In performing services hereunder, MDRX shall at all times be acting as an independent contractor and not as an agent, employee or servant of COM. MDRX is not authorized to act as an agent for or of COM.

B. No MDRX employee or permitted subcontractor shall have any claim under this Agreement or otherwise against COM for vacation pay, paid sick leave, retirement benefits, social security, workers compensation, health, disability, professional malpractice or unemployment insurance benefits or other employee benefits of any kind. MDRX will indemnify and hold COM harmless from any and all liability arising from claims relating to the failure to make such payments, withholdings and benefits of any kind. This duty of MDRX shall survive the termination of this Agreement.

C. COM will not withhold on behalf of such independent contractor/employee any sums for income tax, unemployment insurance, social security, or any other withholding pursuant to any law or requirement of any governmental body. MDRX will indemnify and hold COM harmless from any and all liability arising from claims relating to the failure to make such payments, withholdings and benefits of any kind. This duty of MDRX shall survive the termination of this Agreement.

D. MDRX shall not reassign any of the employees or permitted subcontractors, if any, without the prior approval of COM, provided that upon written request by COM, MDRX shall promptly remove or replace any employee.

4. Non-Assignment. Bullet point four of Section Miscellaneous of the TSA is hereby deleted. The prior written approval of COM shall be required to allow a delegation or assignment of any duty to perform any obligation owed to COM by MDRX, its agents, employees, suppliers, contractors or affiliates; provided however, that MDRX's rights and obligations in whole under this Agreement may be assigned by MDRX in connection with a merger, reorganization, consolidation or sale of all or substantially all of the assets of MDRX or of the division that utilizes the assets covered by this Agreement, except to a person or entity that directly or indirectly is engaged in the business of operating a medical school or a physician practice in the mid-Atlantic Region (a "Competitor") or a person or entity who controls, is controlled by or affiliated with a Competitor. The prior written approval of MDRX shall be required to allow a delegation or assignment of any duty to perform any obligation owed to MDRX by COM, its agents, employees, suppliers, contractors or affiliates; provided however, that COM's rights and obligations in whole or in part, under this Agreement may be assigned by COM in connection with a merger, reorganization, consolidation or sale of all or substantially all of the assets of or of the division that utilizes the assets covered by this Agreement. Any attempted assignment in violation of this Paragraph shall be void.

5. Use of Subcontractors. MDRX shall not perform any of the services pursuant to this Agreement through the use of subcontractors without COM's written consent, which shall not unreasonably be withheld. At COM's request, MDRX shall provide COM with a copy of any proposed or permitted subcontract between MDRX and its subcontractors for COM to verify that such subcontract contains provisions requiring the subcontractor to comply with the requirements of this Agreement. MDRX shall be responsible for supervising the activities, scheduling, and payment of each subcontractor and for each subcontractor's performance in accordance with the terms of this Agreement. If the performance of any MDRX subcontractor is unsatisfactory, MDRX shall take all necessary actions to remedy the performance of such subcontractor. If MDRX is unable to cure the performance of such subcontractor, at COM's

request, MDRX shall replace such subcontractor with another subcontractor or with MDRX personnel acceptable to COM.

6. <u>Counterparts</u>.   Provided that all parties hereto execute a copy of the Agreement, the Agreement (including this Addendum) may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Executed copies of the Agreement may be delivered by facsimile transmission or other comparable means. The Agreement (including this Addendum) shall be deemed fully executed and entered into on the date of execution by the last signatory required hereby.

7. <u>Standards of Performance</u>.   MDRX shall perform the services described in the Agreement with care, skill and diligence, in accordance with the highest and best professional standards currently recognized in the MDRX's profession, and shall be responsible for the professional quality, completeness, and coordination of all reports and other services furnished under this Agreement.  If MDRX fails to meet any applicable professional standards, MDRX shall, upon COM's request and without additional compensation, correct or revise any errors or deficiencies in its reports or other services provided in a timely manner.

8. <u>Term and Termination</u>.   Section "Term and Termination" of the TSA is hereby deleted.

A. The term of this Agreement shall commence as of the Effective Date and shall continue in effect until the tenth (10th) anniversary of said date.  The term of this Agreement shall be subject to earlier termination pursuant to the other provisions of this Paragraph 8; provided, however, that any licenses granted hereunder shall survive for the greater of the Orderly Transition Period (as defined in Paragraph 8.E) or six (6) months following any termination of this Agreement. Upon expiration or termination of this Agreement for any reason, MDRX shall return or, if directed by COM, destroy all Confidential Information in MDRX's possession, provided that MDRX shall retain one copy of all such Confidential Information if required by applicable law.

B. Termination for Convenience COM shall have the right to terminate this Agreement by delivering to MDRX a written notice of termination at least sixty (60) days before said intended date of termination.  Such termination shall be effective at 11:59 p.m. on the date set forth in the notice of termination. In the event COM terminates this Agreement pursuant to this Paragraph 8.B, in addition to the obligations set forth in Paragraph E, MDRX shall continue to perform this Agreement in accordance with its terms through the date of termination, or at COM's request, shall immediately discontinue performance of Agreement and COM shall pay for services performed by MDRX and received by COM up to the date of termination. In no event shall MDRX be entitled to any prospective profits or any damages because of such termination.

C. Termination for Default.

(i)   *Meaning of Default.* Each of the following constitutes a "Default":

(1)   a failure to pay any undisputed amount due within thirty (30) days after receipt of notice of such non-payment;

(2)    a failure by a party to observe and perform any other obligation, covenant, or condition under this Agreement, if such party fails to use its best efforts to correct such failure or if, notwithstanding such party's best efforts, such failure has not been corrected within thirty (30) days after such party has received notice of such failure from the other party (for purposes of this definition, the words "correct" and "corrected" shall include implementation of a work-around or similar temporary measures, provided that the defaulting party continues its best efforts to pursue and promptly implement a full and complete cure); or

(3)    a material representation made in this Agreement by a party that is false.

(ii)    *Election to Terminate for Default.* This Agreement may be terminated by either party, by notice delivered to the other party, in the event of a Default by the other party. Termination shall be effective at 11:59 p.m. on the termination date set forth in the notice of termination, or if none, on the date of receipt by the defaulting party. Termination shall not constitute a party's exclusive remedy for such a Default, and neither party shall be deemed to have waived any of its rights accruing hereunder prior to such Default. If either party terminates this Agreement as a result of a claimed Default by the other party and such other party does not agree that a Default was committed, then such other party shall have the right to avail itself of all defenses and remedies available to it at law, in equity, by statute, or otherwise, except as otherwise expressly set forth in this Agreement. A waiver of any Default hereunder shall not be considered a waiver of any subsequent Default hereunder.

D.  Bankruptcy. Either party may terminate this Agreement effective immediately upon giving notification thereof in the event the other party is adjudged insolvent or bankrupt, or upon the institution of any proceeding against the other party seeking relief, reorganization or arrangement under any laws relating to insolvency, for the making of any assignment for the benefit of creditors, upon the appointment of a receiver, liquidator or trustee of any of the other party's property or assets, upon liquidation, dissolution or winding up of the other party's business, and or other similar laws affecting the enforcement of creditors' rights, generally.

E.  Orderly Transition.  For up to one year following any expiration, suspension, or termination of MDRX's duties under this Agreement or the Maintenance Agreement, MDRX shall cooperate in a timely manner with COM in providing whatever assistance COM reasonably requests in order to facilitate an orderly and efficient transition of services to COM or a third-party provider selected by COM, at reasonable rates not to exceed the standard time and materials rates of MDRX provided to COM as of the termination date (the "Orderly Transition Period"). Such services shall include, but not be limited to:  (I) performing consulting services as requested to assist in implementing a transition plan;  (II) training personnel designated by COM in the use of any equipment, software, materials or processes to be transferred;  (III) cataloging all software, COM information, and other materials used to perform this Agreement; (IV) providing other technical assistance as reasonably requested by COM; and (V) providing maintenance and support pursuant to the terms and pricing set forth in the Agreement.

9.  Indemnification. Section "Intellectual Property Indemnity" of the TSA is hereby deleted.

A.  Intellectual Property.

(i)    MDRX shall defend, indemnify, and hold COM, its parent, affiliates, and their respective officers, directors, employees, agents, and successors (collectively, COM "Indemnitees") harmless against any claim that any information, design, specification, instruction, software, data, service or material furnished by MDRX (including, but not limited to, the Products) ("Material") and used by COM as contemplated by this Agreement infringes any U.S. copyright, U.S. patent or trade secret.

(ii)    MDRX shall have no liability for any claim of infringement resulting from: (i) COM's use of a superseded or altered release of the Material if infringement would have been avoided by the use of a subsequent unaltered release of the Material which was provided to COM; or (ii) any information, design, specification, instruction, software, data, or material not furnished or procured by MDRX.

(iii)    In the event that some or all of the Material should become, or appear likely to become, the subject of a claim of infringement, MDRX shall, at its expense, either: (1) obtain for COM a license to continue using the Material; or (2) modify the Material to be non-infringing or replace the Material with equivalent non-infringing material provided that any such modification or replacement is of equal quality and provides equivalent functionality to the infringing Material. The performance of (1) or (2) above shall not relieve MDRX of its obligations of indemnity set forth in Paragraph A(I).

(iv)    If MDRX is required to return any or discontinue use of infringing Material and COM has purchased a fully-paid up term license for the Material, COM shall be entitled to a refund of the fees paid to MDRX for such infringing Material proportionate to the remaining portion of the fully-paid up term.

B. Injury or Damage. Each party (each an "Indemnitor") shall defend, indemnify, and hold the other party and its Indemnitees (individually and collectively the "Indemnified Group") harmless from and against any loss, liability, damages, or expenses (including reasonable attorneys' fees and court costs) that the Indemnified Group may sustain, incur, or be required to pay, arising out of or in connection with any claim for personal or bodily injury or wrongful death, or for damage to or loss of real or tangible personal property arising directly or indirectly out of this Agreement or out of any acts or omissions of the Indemnitor.

C. Employees. The Indemnitor shall defend, indemnify, and hold the Indemnified Group harmless from and against any loss, liability, damages, or expenses (including reasonable attorneys' fees and court costs) that the Indemnified Group may sustain, incur, or be required to pay, arising out of or in connection with: (i) any aspect of the employment relationship or the termination of the employment relationship between Indemnitor and the Indemnitor's employees assigned to provide services to or for the benefit of the Indemnified Group; (ii) any action brought by any of Indemnitor's personnel seeking to be treated as an employee of the Indemnified Group or claiming entitlement to any of the Indemnified Group's employee benefits; (iii) any action seeking to declare the Indemnified Group as a joint employer with Indemnitor of any of Indemnitor's personnel; (iv) any determination resulting from or pursuant to any arbitration proceeding, court proceeding by a court of competent jurisdiction, administrative proceeding or other similar proceeding that the Indemnified Group was the employer of any of Indemnitor's personnel; or (v) theft, fraud, or misappropriation by

Indemnitor or its personnel, partners, or agents, of tangible or intangible property of the Indemnified Group.

D. Indemnitor's Subcontractors.  Indemnitor shall defend, indemnify, and hold the Indemnified Group harmless from and against any loss, liability, damages, or expenses (including reasonable attorney's fees and court costs) that the Indemnified Group may sustain, incur, or be required to pay arising out of or in connection with any claim by Indemnitor's subcontractors relating to services provided by them for the Indemnified Group in connection with Indemnitor's performance of the services under the terms of this Agreement.

E. Breach.  Indemnitor shall defend, indemnify, and hold the Indemnified Group harmless from and against any loss, liability, damages, or expenses (including reasonable attorneys' fees and court costs) that Indemnified Group may sustain, incur, or be required to pay, arising out of or in connection with any claim related to Indemnitor breach of this Agreement.

F. General Obligations.  MDRX's defense and indemnity obligations shall include the duty to reimburse any attorneys' fees and expenses incurred by the COM Indemnitees for legal action to enforce MDRX's indemnity obligations.  All indemnification obligations set forth in this Paragraph 9 shall be "pay on demand."  Once COM becomes aware of any claim subject to MDRX's indemnification, COM shall:  (I) notify MDRX in writing within thirty (30) days of becoming aware of the claim; and (II) provide MDRX with reasonable cooperation, assistance, information, and authority so as to enable MDRX to perform its obligations hereunder. Reasonable out-of-pocket expenses (including reasonable attorneys' fees and court costs) incurred by COM in providing such assistance will be reimbursed by MDRX.   MDRX acknowledges that it has received sufficient legal consideration for MDRX's indemnity obligations as may be provided under this Agreement.

10. Notices.   All notices and other communications pertaining to the Agreement shall be delivered pursuant to the terms of the TSA

to COM addressed as follows:

> Philadelphia Health & Education Corporation
> 19th Floor, New College Building, Mail Stop 405
> Philadelphia, PA  19102-1192
> Attention:  Senior Vice President of Health Affairs

> With a required copy to:

> Philadelphia Health & Education Corporation
> Office of the General Counsel
> 245 N. 15th Street, Mail Stop 627
> Philadelphia, PA 19102-1175

Invoices:          Philadelphia Health & Education Corporation
19th Floor, New College Building, Mail Stop 405
Philadelphia, PA 19102-1192
Attention: Senior Vice President of Health Affairs

to MDRX addressed as follows:

Allscripts, LLC
2401 Commerce Drive
Libertyville, IL 60048
Attention: President

Either party may change its notification address by giving written notice to that effect to the other party in the manner provided in the TSA. Notices shall be effective upon receipt.

11. Insurance. Bullet point two of Section "Miscellaneous" is hereby deleted.

A. Without limiting and separate from MDRX's undertaking to defend, hold harmless, and indemnify the COM Indemnities as provided in this Agreement, MDRX, at its own cost, shall procure, maintain, and keep in force and effect insurance to protect MDRX and COM from all claims that arise out of or result from MDRX's operations, services or performance under this Agreement, whether such operations, services, or performance are provided by MDRX or by any of MDRX's agents, consultants, suppliers, or subcontractors or by anyone directly employed by any of them, or by anyone for whose acts any of them may be liable. MDRX shall maintain standard insurance policies issued by companies in good standing and licensed to do business in all locations where the services are to be performed, with coverage written on an occurrence (rather than claims made) basis, as follows:

(i)      workers compensation insurance, including occupational illness or disease coverage and all other social insurance in accordance with the statutory requirements of all states, provinces, or countries having jurisdiction over MDRX's employees, with employer's liability of not less than the statutorily required limits;

(ii)     comprehensive or commercial general liability insurance with a combined single limit of not less then $10,000,000 each occurrence for bodily injury and property damage; with a minimum limit of liability of $10,000,000 each person for personal and advertising injury liability; and with a minimum limit of liability of $10,000,000 each occurrence for products/completed operations liability. The products/completed operations liability coverage shall be maintained in full force and effect for not less than three years following completion of the services;

(iii)    automobile liability insurance to cover use of all owned, non-owned, or hired vehicles of not less than $1,000,000 each occurrence and covering bodily and property damage; and

(iv)    professional liability (errors and omissions) insurance in an amount not less than $2,000,000 per occurrence, for damages caused by any act or omission of MDRX, or of any other person for whose acts or omissions MDRX is legally responsible, arising out of the performance of services in a professional capacity, including business income coverage, loss event liability, intellectual property and software design coverage, and breach of network security and disclosure of confidential information coverage. If MDRX should terminate such coverage at any time before three (3) years after acceptance or termination of MDRX's services, MDRX shall obtain extended reporting period coverage ("tail cover"), for a period of not less than three (3) years from MDRX's last performance of services.

B.  MDRX shall comply with the following terms for all insurance coverage required by this Paragraph:

(i)    The policies described in clauses A(ii), A(iii), and A(iv) of this Paragraph shall be endorsed to name COM and its parent and affiliates, directors, officers, and employees as additional insureds on a primary basis.

(ii)    MDRX hereby releases COM and its parent and affiliates, directors, officers, and employees and shall cause, to the extent permitted by the insurer, MDRX's insurers to waive their rights of subrogation against such released parties.

(iii)    The insurance policies listed above shall not be restricted by the country or state in which the services are being performed. In the case of services performed outside the United States and when required by law, the insurance must be placed with a company admitted to do business in that country.

C.  The insurance coverage required by this Paragraph shall be primary and non-contributing with respect to any other insurance or self-insurance that may be maintained by COM and its subsidiaries and affiliates and shall contain a cross-liability or severability-of-interest clause. The fact that MDRX has obtained the insurance required in this Paragraph shall in no manner lessen nor affect MDRX's other obligations or liabilities set forth in this Agreement. MDRX shall supply certificates of insurance satisfactory to COM and all its subsidiaries and affiliates, demonstrating that all of the insurance required above is in force, that not less than thirty (30) days' written notice will be given to COM prior to any cancellation or restrictive modification of the policies, and that the waivers of subrogation are in force.

12. Access to Books and Records.

A.  COM, the Comptroller General of the United States, the Secretary of Health and Human Services or their duly authorized representatives, at any time and from time to time, upon reasonable notice to MDRX, may audit or cause to be audited the relevant portion of the financial, billing and contract records of MDRX and review MDRX's subcontractors to verify the accuracy of MDRX's invoices and MDRX's subcontractors' invoices to MDRX. COM the Comptroller General of the United States, the Secretary of Health and Human Services or their duly authorized representatives will have access to inspect and copy such records for purposes of such audit during normal business hours; provided, however, that if such audit discloses that an error of five percent (5%) or more regarding invoices during the audited period was made in

favor of MDRX or any MDRX subcontractor, MDRX shall pay the entire cost of such audit. MDRX shall bind each of its subcontractors in writing, as part of the agreements between MDRX and the respective subcontractor, to make its financial records available for audit by MDRX or MDRX's authorized representative.

B. MDRX shall maintain, and shall make it a condition of each of its subcontract agreements that its subcontractors maintain, complete and accurate accounting records in a form in accordance with generally accepted accounting principles, to permit substantiation of the charges and prices of MDRX and MDRX's subcontractors hereunder, and to permit verification of compliance by MDRX with the terms of this Agreement. MDRX shall retain, and shall cause each of MDRX's subcontractors to retain, such records for a period of five (5) years from the expiration or termination of this Agreement.

C. This Paragraph 12 shall survive expiration or termination of this Agreement for a period of five (5) years after the date thereof.

13. Construction and Jurisdiction. Bullet point seven of the TSA is hereby deleted. This Addendum and the Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania (excepting any conflict of laws provisions which would serve to defeat application of Pennsylvania substantive law). Other than as required by the Dispute Resolution Paragraph of this Addendum, each of the parties hereto submits to the exclusive jurisdiction of the state and/or federal courts located within Philadelphia County for any suit, hearing or other legal proceeding or in the event any ruling, finding or other legal determination is required or desired hereunder.

14. Compliance with Laws. MDRX shall perform the Agreement in compliance with all applicable federal, state and local laws, rules, regulations and ordinances, HIPAA, and all reasonable, contractual requirements of Medicaid and Medicare. MDRX represents that the Software contains the minimum technical features and functions necessary to enable COM to fulfill the mandatory requirements for any federal law or regulation, including HIPAA, federal requirements of Medicaid and Medicare and state requirements including the Pennsylvania Mental Health Procedures Act, 50 Pa. Cons. Stat. § 7101, et. seq., Pennsylvania Drug and Alcohol Control Act, 71 Pa. Cons. Stat. § 1690.101, et. seq. and the Confidentiality of HIV-Related Information Act, 35 Pa. Cons. Stat. § 7601, et. seq., all as amended and applicable to COM as a healthcare provider (collectively, the "Legal Requirements"). If after the Effective Date there is a change in a Legal Requirement or if at any time a state law or regulation requires the adaptation of the Software, MDRX shall adapt the Software prior to the date such requirement becomes effective, or in the case of a preexisting state requirement as soon as possible ("Regulatory Enhancement"). In the event COM is required to fulfill a Legal Requirement pursuant to HIPAA, MDRX shall develop and implement the Regulatory Enhancement that complies with such requirement, prior to the effective date of such requirement, as a part of Support Services and at no charge to COM. With the exception of HIPAA in the event COM is required to fulfill a mandatory Regulatory Enhancement, and same (i) requires the adaptation of the Software, (ii) can reasonably be supported by the Software in the manner intended for its use (as such is described in the Documentation), (iii) cannot through commercially reasonable efforts be accomplished by COM through the use of procedures, tools, programs or utilities otherwise available at no more than minimal additional cost to COM, and

(iv) becomes effective and enforceable during the term, and (v) is not addressed by MDRX in any Update, MDRX shall, upon COM's written notice provided to MDRX within a reasonable period of time (no later than 180 days prior to the effective date, if available) of such requirement, adapt the Software and implement such adaptation prior to the date such requirement becomes effective; provided that MDRX's obligation to adapt shall be excused if in the event that no later than 90 days prior to the effective date, or such lesser time if 90 days is not available under such new law, of such requirement (x) MDRX is not able, through use of its best efforts, to provide such a modification and delivers written notice thereof to COM or (y) MDRX provides a reasonable written estimate of the cost to MDRX to develop the Regulatory Enhancement exceeding $100,000 in the event of a federal Legal Requirement or $50,000 for a state Legal Requirement. In the event that COM receives a notice from MDRX pursuant to the preceding sentence, COM may (aa) if such notice is received pursuant to (y) above, agree to pay such excess amount (calculated on a pro-rata basis based upon the MDRX customers required to implement the adaptation) as set forth in the following sentence, whereupon MDRX shall adapt the Software, or (bb) exercise its right to terminate this Agreement pursuant to Section 8.B; provided that no termination fee shall apply. MDRX may charge COM a one-time fee for any adaptations to the Software on account of new federal or state laws, provided that such fees charged to COM shall not, in each instance, exceed the cost of developing such adaptation divided by the number of MDRX customers that elect to license such adaptation (provided that the amount MDRX elects to charge such other customers shall not affect the amount MDRX may properly charge COM hereunder).

15. Changes to Scope of Services. COM shall have the right from time to time by submission of a purchase order to propose changes in or additions to the services to be supplied under the Agreement and MDRX agrees to provide such services if it is commercially reasonable to do so (such purchase order when accepted in writing by each party, a "Change Order"). If such changes cause an increase or decrease in the cost or time required for performance, the parties will agree on the revised price and delivery schedule before the changes are initiated. MDRX shall not suspend performance of any services during the review and negotiation of any purchase order or Change Order, except as may be directed by COM. The acceptance procedures set forth in Paragraph 22 shall apply to deliverables provided pursuant to any Change Order. Payments for any customizations or other deliverables provided pursuant to a Change Order shall be due upon Final Acceptance of such Change Order deliverables, or as otherwise stated in the Change Order.

16. Travel Expenses. MDRX shall be responsible for all expenses incurred by it in connection with the performance of this Agreement, unless MDRX has obtained prior written approval from COM. COM shall reimburse MDRX for out-of-pocket expenses including, travel, lodging and other reasonable out-of-pocket expenses ("Out-of-Pocket Expenses") actually incurred by MDRX in connection with providing Implementation Services and approved in advance in writing by COM'S Project Manager; provided, however, that such expenses were incurred in accordance with MDRX's expense reimbursement policy, a copy of which is attached to this Addendum as *Exhibit 7*. Expenses for on-site implementation services identified in the Implementation Schedule agreed to by the parties shall be deemed approved.

17. Delivery. Section "Implementation" of the TSA is hereby deleted. Delivery of the Products to COM by MDRX shall be made at MDRX's sole cost and expense in sufficient time to permit

MDRX to implement the Products and Equipment pursuant to the implementation schedule set forth on *Exhibit 2.1* of the TSA (the "Implementation Schedule"). The Products shall be insured by MDRX and packaged appropriately in a manner reasonably acceptable to COM. COM must be able to identify easily all items of Product contained within each carton. Risk of loss shall remain with MDRX until delivery to and inspection within a reasonable time, not to exceed three business days from receipt, by COM. A packing slip indicating each item and item quantity shipped shall accompany every shipment. The packing list shall be attached to the exterior of one of the containers in each shipment in a conspicuous manner. All items "not found" shall be noted and the anticipated availability of the items shall be indicated clearly on the packing list. No substitutions shall be made without prior authorization by COM.

18. <u>Implementation of Products</u>. MDRX will implement, install, configure, and set up the Products, and provide other related services, in accordance with the specifications set forth in MDRX's Response to COM's Request for Proposals ("RFP"), the documentation provided by MDRX, all as modified by the Additional Specifications set forth on *Exhibit 2.2* (the RFP, the documentation and the Additional Specifications, collectively, the "Specifications") and in accordance with the schedule set forth on the Implementation Schedule (the "Implementation Services"). The compensation for the accomplishment of the Implementation Services shall be set forth on *Exhibit 3* (the "Implementation Price"). In no event shall the costs for Implementation Services exceed the Implementation Price. Payment of the Implementation Price shall be made in segments, upon acceptance of milestone deliverables as specified on *Exhibit 3* ("Implementation Milestone"). Once COM has accepted an Implementation Milestone, the compensation set forth attributable thereto shall become due and payable in accordance with Paragraph 19.

19. <u>Payment Terms</u>.

A. Except as set forth in Paragraph 22, MDRX shall invoice COM for all fees due pursuant to the Fee Schedule on *Exhibit 3* and other permitted expenses on a monthly basis. Subject to Paragraph B, COM shall pay MDRX within forty-five (45) days after COM's receipt of MDRX's valid and undisputed invoice. Payment shall not be construed to be an acceptance of any performance.

B. COM shall have the right to withhold payment of all or any portion of an invoice that COM, in good faith, disputes. Such withholding shall not constitute a Default by COM.

C. MDRX shall not increase the Implementation Price or fees set forth on the Fee Schedule, time and materials rates or maintenance fees; provided that after the fifth (5th) anniversary of the Effective Date, and thereafter as of each succeeding anniversary during the term of this Agreement, such fees and rates may be increased by an amount not to exceed the lesser of: (i) five percent (5%) of the rates then in effect, or (ii) percentage increase since the immediately preceding anniversary of the Effective Date, in the Bureau of Labor Statistics Consumer Price Index for All Urban Consumers for all Items, not seasonally adjusted ((1982-84) = 100) as published by the Bureau of Labor Statistics of the Department of Labor.

D. COM may license additional TouchWorks software modules at a price equal to MDRX's then current list price minus a fifty percent (50%) software license fee discount.

20. <u>Maintenance and Support Services</u>.  Section "Support Services" of the TSA is hereby deleted.  MDRX shall provide maintenance and support services for the Products in accordance with the terms and conditions of <u>*Exhibit 4*</u> ("Maintenance and Support").

21. <u>Ownership of Protected Health Information; Prohibition Against Aggregated Use</u>.  As between MDRX and COM, COM shall own all Protected Health Information free and clear of any encumbrance by, or liability or further obligation to, MDRX.  MDRX shall not use or disclose to any third parties any de-identified or aggregated Protected Health Information obtain pursuant to this Agreement.

22. <u>Acceptance Testing</u>.  Final Acceptance shall be deemed to occur upon the earliest of (a) COM's delivery to MDRX of an acceptance certificate, executed by an authorized representative of COM signifying that the Software operates in accordance with the Documentation, or (b) the close of the Testing Period if COM does not provide notice to MDRX of a material failure of the Software to conform to the Documentation prior to the end of such Testing Period ("Final Acceptance").  For purposes of this Agreement, "Testing Period" is defined as the thirty (30) day period immediately following the Go Live date determined of a module-by-module basis. During the Testing Period, COM will use commercially reasonable efforts to immediately provide notice to MDRX of any failure of the Software to substantially conform to the Documentation.  Upon receipt of such notice, MDRX will use commercially reasonable efforts to remedy the failure and cure such failure within fourteen (14) business days from receipt of notice of such failure.  If such notice is provided by COM to MDRX, the Testing Period shall be extended until thirty (30) days after MDRX delivers a remedy.  During the Testing Period extension(s), COM may identify additional failures and nonconformities, and, if it does so, MDRX will use commercially reasonable efforts to remedy and cure the additional failures or nonconformities and the Testing Period shall be further extended until thirty (30) days after MDRX delivers an additional remedy.  The Testing Period shall terminate on the earlier of (i) COM's written Acceptance or (ii) the elapse of a thirty (30) day period during which COM does not provide additional written notice of a failure or nonconformity.  Notwithstanding the foregoing, any Testing Period, at COM's option, may additionally be extended by thirty (30) days twice thereafter.  Any future extension must be mutually agreed to in writing by the parties.

23. <u>Procurement of Additional Third-Party Products</u>.  If COM determines, in its reasonable judgment, that additional, replacement, or upgraded hardware or software is required to meet COM's requirements then, at COM's direction, MDRX shall use its reasonable best efforts to assist COM in procuring such hardware or software for COM at the best rate that MDRX is able to obtain for the same.  MDRX shall pass through to COM all user manuals, documentation, warranties, and delivery terms from the suppliers of the hardware or software that cover the same or any component thereof.

24. <u>Protection of Resources</u>.  MDRX shall be responsible to repair or replace, at MDRX's option, items of COM's hardware, software, or other assets or resources that are damaged, lost, or destroyed while in MDRX's care, custody, or control.  MDRX shall use its best efforts to minimize any damages to COM resulting from data loss.

25. <u>Milestones</u>.  Unless otherwise specified in the applicable Statement of Work, in the event that MDRX fails to meet an Implementation Milestone, to the extent the failure is attributable to

MDRX, COM may provide written notice by facsimile or email to MDRX that COM intends to enforce the liquidated damages provision unless a mutually acceptable correction plan is accepted within five (5) business days of receipt of such notice. In the event that such plan is not accepted within five (5) business days of receipt of such notice, COM shall be entitled to recover liquidated damages equal to: (a) ten percent (10%) of the total charges for such Implementation Milestone at the expiration of such five-day period; and (b) for each week (seven day period) after the initial week, an additional five percent (5%) of the total charges for such Implementation Milestone. Liquidated Damages payable on account of a delay of any Implementation Milestone shall not exceed the Implementation Price attributable to such Implementation Milestone. Such liquidated damages shall not be returned to MDRX upon acceptance of the Implementation Milestone; provided that such liquidated damages shall be recoverable by MDRX upon the timely acceptance of any subsequent Implementation Milestone. MDRX acknowledges that in the event such deadlines are not achieved in the manner specified in this Agreement, COM will suffer a material adverse impact on its business and operations and that the damages resulting from MDRX's failure to achieve such deadlines are not susceptible of precise determination. Except with respect to any delay in achieving the final Implementation Milestone, MDRX shall not be assessed any charges for delays in any Implementation Milestone solely attributable to a delay in a prior Implementation Milestone. The remedy of COM set forth in this Paragraph shall be in addition to and not in lieu of any other remedies pursuant to this Agreement.

26. Training. MDRX shall provide COM with training of COM's project team on-site without additional cost beyond the agreed upon fees in the Fee Schedule, pursuant to the documentation provided by MDRX. Additional training shall be available at the time and materials rates in effect on the Effective Date. MDRX shall invoice COM for such training on or after the later to occur of Final Acceptance or the completion of all training services to COM's reasonable satisfaction.

27. Products. Use of the Products is not restricted to any site of COM or its affiliates. Unless otherwise specified, COM and its affiliates may use the Products on an unlimited number of computers with the number of authorized users set forth in the TSA. COM may make copies of the Products, and may transfer the software components thereof to hard disk, as it reasonably determines to be appropriate for its use of the Products and for archival or back-up purposes. COM shall be entitled to permit third party consultants, outsourcers and other service providers to exercise the foregoing rights and licenses on behalf of COM and its affiliates.

A. Updates. For so long as MDRX is required to provide maintenance and support services pursuant to this Agreement, the License shall include at no additional cost, except as provided in Section 14 of this Addendum, to COM any and all additions, substitutions, enhancements, extensions, versions, modifications, derivations, new releases or upgrades made by MDRX or its designee of or to the Products and made available to purchasers of Support Services generally at no additional charge (i) that improve the efficiency or effectiveness of the functions of the Products, (ii) that correct any errors or defects in the Products or (iii) that make Products compliant with applicable federal, state and local laws, rules, regulations, and ordinances, including HIPAA, and all reasonable contractual requirements of Medicaid, Medicare and other third party payors identified to MDRX on or before the applicable

compliance date ("Improvements"). As used in the Agreement, the terms Software, Updates and Equipment shall be deemed to include Improvements.

B. Termination. The license granted pursuant to the Agreement shall commence upon the Effective Date shall continue for the term of the Agreement and any renewal terms until and the greater of (i) the Orderly Transition Period, or (ii) up to six (6) months after any termination.

C. Escrow. In addition to the release conditions in the Escrow Agreement between the parties and The Merchant's Trust Company of even date herewith, MDRX shall authorize release of the source code to the Product in the event that MDRX materially fails to support or maintain the Product pursuant to the terms of the Agreement and such failure remains uncured for thirty (30) days following receipt of notice by MDRX from COM detailing such failure.

28. Representations and Warranties. The Section "Limited Warranty" of the TSA is hereby deleted. MDRX represents and warrants that:

A. all services provided by MDRX to COM will be performed consistent with the standards of performance set forth in Paragraph 7;

B. the Products shall continue to meet the acceptance criteria developed pursuant to this Agreement, for a period of twelve (12) months after Final Acceptance of the same (the "Warranty Period");

C. the Products shall not contain backdoor or concealed access to Products or any "software locks" self-help devices or any similar devices which, upon the occurrence of a certain event, the passage of a certain amount of time, or the taking of any action (or the failure to take action) by or on behalf of MDRX or any third party, will cause Products or data of COM to be destroyed, erased, damaged or otherwise made inoperable and will not contain any "computer virus," which is any program, routine, subroutine or data incorporated into any software with malicious or mischievous intent that disrupts the proper operation of COM's equipment or any software used with such equipment; provided that nothing shall prevent MDRX from including in the Products features that limit the use of the Products to a customer's number of authorized users;

D. In the performance of this Agreement, MDRX shall comply with all applicable federal, state and local laws, rules, regulations, and ordinances, HIPAA, and all reasonable contractual requirements of Medicaid, Medicare and other third party payors identified to MDRX by COM.

E. The Products and services provided pursuant to this Agreement comply with all applicable effective or final federal, rules, regulations, and ordinances, including HIPAA, and all reasonable contractual requirements of Medicaid, Medicare and other third party payors identified to MDRX by COM. MDRX is unaware of any failure of the Software to comply with any state or local laws, rules, regulations or ordinances applicable to COM.

F. it and any personnel providing services hereunder have obtained all licenses and permits required by law to engage in the activities necessary to perform its obligations under the Agreement.

G. (i) it is a limited liability company duly formed and in good standing under the laws of the State of Delaware, and it is qualified and registered to transact business in all states where the performance of its obligations hereunder would require such qualification; (ii) it has all necessary rights, powers, and authority to enter into and perform this Agreement, and that the execution, delivery, and performance of this Agreement by MDRX have been duly authorized by all necessary action; (iii) the execution and performance of this Agreement will not violate any law, statute, or regulation and will not breach any agreement, covenant, court order, judgment, or decree to which it is bound; (iv) it has, and shall maintain in effect, all licenses and permits necessary for it to perform this Agreement; and (v) it has (or will have when such materials are conveyed) full authority and sufficient right, title, and interest in and to the Software, exclusive of rights respecting programs, data, documentation and materials provided by COM or identified by MDRX in writing to COM as furnished to MDRX by third-party vendors, to grant and convey the rights accorded to COM pursuant to this Agreement.

H. it has no knowledge of any action, suit, proceeding, or material claim or investigation pending or, to its knowledge, threatened against MDRX with respect to the Products or any component thereof, in any court, or by or before any federal, state, municipal, or other governmental department, commission, board, bureau, agency, or instrumentality, domestic or foreign, or before any arbitrator of any kind, that, if adversely determined, would prevent MDRX from consummating the transactions contemplated hereby or performing its obligations hereunder.

I. it is authorized, empowered, and has taken all necessary action to pass through the warranties provided by third party OEMs and resellers concerning all items of Equipment provided to COM pursuant to this Agreement, and that each warranty shall meet the minimum terms set forth in *Exhibit 5* attached hereto and incorporated herein.

J. in the event of any modification, default, termination or expiration of the Alliance Agreement between MDRX and IDX Systems Corporation ("IDX") dated January 8, 2001, MDRX shall continue to provide support and maintenance services as required by this Agreement to MDRX's portion of any interface enabling data exchange between MDRX Software and IDX products, as necessary to maintain the continued interoperability of the MDRX Software and IDX products.

THE WARRANTIES MADE BY THE PARTIES ARE LIMITED TO THOSE SET FORTH IN THIS AGREEMENT ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED AND ANY AND ALL OTHER SUCH WARRANTIES ARE HEREBY DISCLAIMED, INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

29. New Products. MDRX shall advise COM, of any new product that is similar to the Products covered by this Agreement that MDRX or its suppliers develop. This Agreement may be amended to include any new Products COM desires to purchase from MDRX.

30. Dispute Resolution.

A. Except for injunctive relief permitted by Paragraph 2, each party hereby agrees to resolve each claim, dispute or other dispute arising out of or relating to this Agreement, pursuant to the following procedure. If any dispute arises between the parties, the parties' Project Managers shall use their reasonable best efforts to achieve a resolution. If the dispute has not been resolved by the parties Project Managers within a reasonable period of time that shall not exceed ten (10) days after such dispute has come to their attention, or such longer period as agreed to in writing by the parties, the parties shall deliver to MDRX's Chief Information Officer and COM's Secretary a detailed summary of the dispute within the ten (10) day period next ensuing, and shall within such time period supply such designated officials or their equivalents with a statement supporting its claim, which statement shall include a detailed description of the matter and be accompanied by all necessary and appropriate supporting data and materials. Failing resolution by such officials, the matter shall promptly be submitted for arbitration in Philadelphia in accordance with the rules of the American Health Lawyers Association, whose decision shall be binding and conclusive in all respects. A party shall not be liable for, and hereby waives, any claim or potential claim of such party of which such party knew and which was not reported by it in accordance with the provisions of this Paragraph. MDRX agrees to continue performance of the Agreement during the time any dispute hereunder is pending. COM shall not be bound to any adjustments in the compensation or time for performance for MDRX's claim unless pursuant to this dispute resolution process or expressly agreed to by COM in writing.

B. Notwithstanding anything to the contrary contained herein, and even if any dispute arises between the parties and regardless of whether or not the resolution of the dispute requires the use of the dispute resolution procedure set out in this Paragraph, in no event, nor for any reason other than COM's refusal to comply with an arbitration award as hereinabove provided, shall MDRX interrupt the provision of services, disable the Products or any portion of either, or perform any other action that prevents, slows down, or reduces in any way the provision of services to COM or COM's ability to conduct its business.

31. <u>Limitation of Liability</u>.  The limitations of liability contained in this Agreement that refer to MDRX's liability shall apply to each party's liability and the limit of such liability is hereby increased to six million dollars ($6,000,000), regardless of the type or kind of damage. In addition, such limitations of liability shall exclude any claims, loss or damage to the extent arising out of or resulting from (i) third party claims for which indemnification is required pursuant to Paragraph 9(A), or (ii) MDRX's gross negligence or willful or fraudulent misconduct.

32. <u>Business Maintenance</u>.  MDRX's health care billing, collection, physician practice and records management and managed care administrative software business shall, at all times during the term of this Agreement constitute no less than 50% of MDRX's annual net revenue. MDRX shall provide to COM prompt written detailed notice (which notice shall include, a statement of MDRX setting forth details of such event and the action which MDRX has taken and proposes to take with respect thereto) to COM as soon as possible and in any event within three days(or the earliest permissible date if MDRX reasonably believes that such disclosure would improperly pre-empt a public disclosure required by federal securities laws) after (A) the occurrence of a default in any material credit facility pursuant to which MDRX or any of its affiliates is a borrower; (B) the occurrence of any adverse development with respect to any litigation, action,

proceeding, or labor controversy which could affect MDRX's performance of this Agreement (C) any material adverse change in the financial condition, operations, assets, business, properties or prospects of MDRX or its affiliates.

33. Entire Agreement. This Addendum, the TSA and the BAA of even date herewith represent the entire understanding between the parties with respect to the subject matter hereof. Except as expressly set forth in this Addendum, this Agreement shall supersede any policy, handbook or other unilateral document furnished by a party to the other in connection with this Agreement.

34. No Liens. Neither party shall place any lien or encumbrance upon the property of the other or any of the goods provided pursuant to this Agreement or permit any such lien or encumbrance to be placed by any affiliate or subcontractor of such party.

35. Hosting. MDRX acknowledges that IDX shall provide hosting services for the Products ("Hosting Services") and permits COM to disclose to IDX and permit IDX to use Confidential Information of MDRX in connection therewith.

36. Marketing Efforts. MDRX and COM shall cooperate to develop and implement a public relations ("PR") plan promoting COM's use of the TouchWorks software. An initial draft of the PR plan, including each party's responsibilities, attached hereto as *Exhibit 6*. Except as explicitly provided in the final PR plan, MDRX shall perform its responsibilities under the PR plan at no additional cost to COM. Notwithstanding the foregoing, MDRX shall not publish or disclose any of the advertising or promotional materials, set forth in the Marketing Program, except the Press Release, and shall not use any of the name, logos, trademarks, service marks or trade dress of COM with COM's prior written approval. MDRX shall promptly publish the Press Release set forth in *Exhibit 6* in the publications set forth in *Exhibit 6* upon execution of this Agreement by COM and MDRX. MDRX shall submit all advertising and promotional materials set forth in *Exhibit 6* in final form for review and comment by Drexel pursuant to the Implementation Schedule.

37. Research Services. Beginning on the third anniversary of the Effective Date, COM shall undertake a three year study on the use of the MDRX electronic medical record system and its influence on medical education and patient care at COM. COM shall produce an annual report on the progress of the study and any final results of its research and deliver the information to MDRX. MDRX shall have the right to publish the COM research information, subject only to COM's review and approval of any publication that is an edited, modified or abstracted version of the COM report. MDRX shall pay COM One Hundred and Fifty Thousand Dollars in three annual installments of Fifty Thousand Dollars each, the first of which shall be payable on September 1, 2006.

The parties have caused this Addendum to be executed and delivered by their respective, duly authorized representatives.

PHILADELPHIA HEALTH & EDUCATION CORPORATION d/b/a Drexel University College of Medicine
By:

_James Archibald_ SR VP for Health Sciences

JAMES A. Archibald
Its SR VP for Health Sciences

ALLSCRIPTS, LLC
By:

Name: Joseph E. Carey
Title: C.O.O.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PHILADELPHIA HEALTH & EDUCATION CORPORATION, d/b/a/ DREXEL UNIVERSITY COLLEGE OF MEDICINE<br><br>Plaintiff,<br><br>-vs.-<br><br>ALLSCRIPTS, LLC and MEDICOMP SYSTEMS INC.<br><br>Defendants. | :<br>:<br>: CIVIL ACTION NO. 07-1288-RB<br>:<br>: ORAL ARGUMENT REQUESTED<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

I, Jennifer K. Welsh, hereby certify that on this 5th day of April 2007, I caused a true and correct copy of Allscripts, LLC's Motion to Compel Arbitration to be filed electronically. It is available for viewing and downloading from the ECF system. I further certify that I caused it to be served as follows:

VIA HAND DELIVERY

Carolyn P. Short, Esq.
Christian C. Mattioli, Esq.
Reed Smith LLP
2500 One Liberty Plaza
Philadelphia, PA 19103

Attorneys for Philadelphia Health & Education Corporation
d/b/a Drexel University College Of Medicine

VIA FEDERAL EXPRESS

Medicomp Systems Inc.
Suite 175, 14500 Avion Parkway
Chantilly, VA 20151

s/ Jennifer K. Welsh_____
Jennifer K. Welsh